## MURPHY v. CASSELMAN and the United States Fidelity & Deposit Company of Baltimore, Maryland.

(139 N. W. 802.)

**Redemption — purchaser — execution — voluntary payment — appeal — dismissal.**

    The redemption from the purchaser of property sold under an execution is not a voluntary payment of the debt for the cancelation and payment of which the said execution was levied and said property sold. Where, therefore, an appeal has been taken to the supreme court from the judgment on which said execution was levied, the redemption of the property from the purchaser, even though such purchaser is the plaintiff in the original suit, will not be considered to be a voluntary payment of the debt, and to be a ground for a dismissal of the appeal taken.

Opinion filed January 11, 1913,

Appeal from the District Court for Grand Forks County, *Templeton,* J.

Motion to dismiss appeal on the ground of voluntary payment of the judgment.

**Denied.**

Statement by BRUCE, J.  This is a motion to dismiss an appeal on the ground that the matters in controversy have been disposed of by a voluntary payment, and that the appeal would now merely raise a moot question.  On the 17th day of June, 1902, a judgment was rendered in favor of one Frank B. Lown, trustee, and against one Judson P. Casselman, in the district court of Grand Forks county, for the sum of $985.09.  On the 18th day of June, 1902, C. J. Murphy, attorney for said Frank B. Lown, filed an attorney's lien against this judgment. On the 1st day of August, 1903, Casselman was declared to be a bankrupt in the United States district court for the district of Minnesota, and discharged of all debts and claims which existed on and prior to the 18th day of May, 1903.  On the 1st day of April, 1911, a petition was filed in the district court of Grand Forks county to have the said judgment of Frank B. Lown, trustee, against said Casselman, discharged of record under the provisions of § 3898 of the Revised Codes of North Dakota.  This petition was denied in part by order of the district court dated June 8, 1911, the order preserving the judgment to the extent of the claim of C. J. Murphy, the respondent in the action now before the court, to an attorney's lien upon the same.  On the 19th day of August, 1911, the said Murphy issued an execution on the judgment.  On the 16th day of September, 1911, the said Casselman, as principal, and the United States Fidelity & Deposit Company of Baltimore, as surety, executed a bond to C. J. Murphy in the sum of $600, "that if C. J. Murphy fails to maintain an action to recover said claim of lien, this obligation shall be void."  Prior to the 30th day of September, 1911, C. J. Murphy started an action against J. P. Casselman and the United States Fidelity & Deposit Company on the bond. In this action, and on January 15, 1912, a judgment was rendered in favor of the plaintiff and respondent herein, C. J. Murphy, and against both the said Casselman and the said United States Fidelity & Deposit Company, for the sum of $500.37 and $37.65 costs.  On September 30, 1911, and after the commencement of the last-mentioned action, the said C. J. Murphy caused property belonging to Judson P. Casselman, which the said Casselman claims in his affidavits to exceed in value the sum of $10,000, to be sold under the execution theretofore issued on the said Frank B. Lown judgment.  At said sale the said Murphy became the purchaser, and certificate of execution sale was

thereupon issued to him. Said Murphy paid no money on said sale, but the purchase was made upon the assumption that the said Murphy was owner of that part of the judgment that had been preserved by the court's order as hereinbefore stated, for the protection of his said lien. Appeals were perfected by the defendants, the United States Fidelity & Deposit Company and Judson P. Casselman, in both the suit by C. J. Murphy on the bond hereinbefore referred to, and by Judson J. Casselman in the original suit of Frank B. Lown against Judson P. Casselman. Both appeals were taken in time to have the causes placed on the April, 1912, calendar of this court. These appeals are, however, still upon the calendar, and have not yet been reached for argument.

On the 28th day of September, 1912, and just before the time for redemption expired, Judson P. Casselman tendered the sheriff of Grand Forks county the amount necessary to redeem from the sale under the Lown judgment, and a certificate of redemption was issued to him by the sheriff. C. J. Murphy, the purchaser at said sheriff's sale and the owner of the lien aforesaid, and the plaintiff and respondent in the suit by C. J. Murphy on the bond hereinbefore referred to, and against Judson P. Casselman and the said United States Fidelity & Deposit Company, now moves this court to have the appeals in both cases dismissed on the ground that said judgments are, according to affiant's opinion and belief, by operation of law satisfied and discharged by the payment made by said Judson P. Casselman in tendering the redemption from the execution sale in the case of Lown v. Casselman, and that therefore the merits of the controversy involved in the appeals in these cases have been disposed of.

*Murphy & Duggan,* for respondent.
*W. J. Mayer,* for appellants.

BRUCE, J. (after stating the facts as above). The only question to be decided on this motion is whether the payment by the defendant Judson P. Casselman, in order to redeem the property sold under the judgment rendered in the case of Lown v. Casselman, and for the satisfaction of the attorney's lien of the plaintiff Murphy, which the district court had ordered preserved, was so far a

voluntary payment of the lien and the debt that, if the judgment in said cause were set aside by this court on the appeal now pending, no recovery could be had by the said Casselman for damages accruing from the levy of the execution in said cause. We think that there is only one answer to this question, and that there was no such voluntary payment. A distinction must be made between the payment of a debt, and the redemption of property which has been sold in order that that debt may be extinguished. When the defendant Casselman redeemed the property, he did not pay any debt. The debt had already been paid and extinguished by the sale of the property under the execution. If the property had been sold at the execution sale to a third party, and not to the plaintiff Murphy, there would have been no necessity for any communication either between the purchaser and the said Murphy, or between the defendant and said Murphy. The debt to Murphy was paid. It was paid by the sale of Casselman's property on execution. This payment was involuntary, and not voluntary. When Casselman redeemed he was a purchaser of the property, and nothing more. The fact that Murphy was himself the purchaser at the sheriff's sale does not change the real position of the parties. When he bid in the property he bid it in as a purchaser, and not as a creditor. This is made clear by § 7140 of our statute which relates to redemptions, and which provides that he who seeks to redeem shall pay to the purchaser, not the amount of the judgment debt, but merely the amount of *his* purchase. The origin of the word *redemption* is to be found in the Latin words *re* and *emere*. Its principal definition as given by Mr. Webster is *to purchase back: to regain possession by payment of a stipulated price: repurchase.* Under the old Israelitish Law, a man who *sold* a dwelling house in a walled city might *redeem* it within a whole year after it was sold. Lev. 25, 29. In this case there was no assumption of a debt to the vendee, but a mere right to repurchase in the vendor, and, though the word *redeem* has often been used in other senses, this is the general and primary use of the word. In speaking of the subject, the supreme court of Wisconsin, in Lindsay v. Fay, 28 Wis. 181, has said: "Was such redemption an actual payment of the tax? It was said by the chief justice in Woodbury v. Shackelford, 19 Wis. 55, that 'it is a settled principle in the construction of statutes of limitation that general words are to have a general operation, and

unless there can be found in the statute itself some ground for restraining it, it cannot be restrained by arbitrary addition or retrenchment. No exceptions can be claimed by or in favor of particular persons or cases, unless they are expressly mentioned.' . . . Applying these rules to this case, the conclusion seems inevitable that a redemption of the land is not a payment of the tax. To hold otherwise would be to restrain the operation of the statute 'by arbitrary addition,' which the rule of law forbids. There seems to be a wide difference between the payment of the tax by the owner of the land, and the redemption of the land by him after it has been sold for nonpayment of the taxes assessed upon it. *There is really no tax to be paid when land is thus redeemed.* That has been cancelled by the sale. The redemption is the payment to the holder of the certificate of an encumbrance which he thereby has upon the land, and does not seem to be the payment of a tax in any correct sense of that term." The logic of this case seems to us to be irresistible, and the wisdom and the justice of the rule seem to be equally clear. The rule of voluntary payments is, at the best, a harsh rule, and has been harshly applied, and we do not feel that it should be twisted and distorted so as to apply to a case such as that before us.

We are not unmindful of the cases of Shane v. St. Paul, 26 Minn. 543, 6 N. W. 349, and Wessel v. D. S. B. Johnston Land & Mortg. Co. 3 N. D. 163, 44 Am. St. Rep. 529, 54 N. W. 922, cited by counsel for respondent. It is to be remembered, however, that the former case was one in which an attempt was made to recover from the city of St. Paul taxes which had been voluntarily paid to it, or, rather, to redeem from said city land which had been sold upon a void tax judgment; while the latter was one in which a recovery was sought of money paid to redeem real estate from a foreclosure sale in a case, in which the plaintiff was and always had been in possession, and where the foreclosure proceedings were totally void. The only reason why the North Dakota court held the payment in the latter case to be voluntary was because of this possession and right of possession, and that there was no attempt or danger of an eviction of the plaintiff, nor real duress either of himself or of his goods. So, too, in this case there had been no adjudication of the rights of the parties. There had merely been an invalid foreclosure by advertisement, prior to which the lien of the mortgage

had been extinguished by a tender of payment. Both parties knew this. The foreclosure and sale were of no effect for this reason. There was no foreclosure or sale, and hence, strictly speaking, there could be no redemption. Both parties knew these facts; hence, any payment for any purpose, not being a redemption, must have been a payment of the debt.

In considering the Minnesota case, we must also remember that a much greater strictness has been noticed in the courts in cases involving suits for the recovery of taxes illegally paid, than in other instances. See notes in 94 Am. St. Rep. 425. The general rule certainly is that expressed by the supreme court of South Dakota in the case of Whittaker v. Deadwood, 12 S. D. 608, 82 N. W. 202. This was an action to have declared illegal and void certain special assessments for street improvements, and to cancel certain tax certificates. Pending the appeal from an adverse decision in the lower court, plaintiff redeemed his property from the tax sale, and a motion to dismiss was made in the supreme court. The court refused to entertain the motion. In doing so it was certainly acting in accordance with the growing weight of authority, which seems to be to the effect that where there is a real attempt to interfere with the enjoyment of property rights, coupled with a present ability on the part of the wrongdoer to so interfere, a payment made in protection of such rights will not be considered voluntary. See notes to New Orleans & N. E. R. Co. v. Louisiana Constr. & Improv. Co. 94 Am. St. Rep. 409, et seq. In the North Dakota case of Wessel v. D. S. B. Johnston Land & Mortg. Co., there was no attempt to deprive the plaintiff of the possession of property, nor any power to deprive him of such. The plaintiff was in possession, and his only purpose in paying the claim was to remove a cloud upon his title. In the case at bar the facts seem to be very different. Peyser v. New York, 70 N. Y. 497, 26 Am. Rep. 624.

There is also another and more controlling reason for holding that the Wessel Case does not control here, and on which to distinguish cases cited and relied upon by counsel for respondent. An examination of the Wessel Case and the case of Shane v. St. Paul, and nearly all of the cases cited and relied upon in these decisions, will show that they were cases in which an attempt was made to recover from the payee the money paid, and not cases where an action for damages was brought

against the plaintiff in the suit in which the execution was issued, or against the mortgagee in foreclosure proceedings for a wrongful seizure and sale of property. In the latter case the amount paid in order to redeem might be evidence of the damage sustained, but it is not the gist or subject of the action. It might very well be that one could not recover from the purchaser of the sheriff's certificate at a mortgage sale the amount paid to him to redeem from such certificate, but might, nevertheless, sue the mortgagee for unlawfully selling the property in the first instance. In other words, we believe that the distinction made in the first part of this opinion is controlling, and that there is a wide distinction between a redemption and a payment.

The motion is denied.