GOLD-STABECK LOAN & CREDIT COMPANY v. E. B. KIN-
NEY, as Trustee in Bankruptcy of N. B. Bailey, P. B. Mulhollam,
Carrie Lombard, as Administratrix of the Estate of Geo. Lombard,
S. L. Bennett, R. L. Haskins, T. C. Richmond, R. W. Jackman, and
S. T. Swanson.

(157 N. W. 482.)

**Mortgage — mortgagor — mortgagee — residence of each — indebtedness se-
cured — payable in state where mortgagee lives — land covered — in dif-
ferent state — usury — defense of — indebtedness — laws of state where
payable — governed by.**

1. A mortgage made by a resident of Wisconsin to a resident of Minnesota
and to secure a debt which is payable in Minnesota is, as far as the defense of
usury is concerned, governed by the laws of Minnesota even though the land
is situated in North Dakota.

**Usury — rate of interest — contract — intention of parties — construction —
rule.**

2. The test of usury under the laws of Minnesota is, "Will the contract, if

Note.—Ordinarily a purchaser of real estate who purchases subject to a usurious
encumbrance cannot assert the claim of usury either as a defense or affirmatively,
the claim of usury being personal to the mortgagor and those in privity with him;
but a purchaser of mortgaged premises encumbered by a usurious mortgage is not
estopped from asserting the defense of usury where he purchased without knowledge
of the existence of the encumbrance, and the amount thereof was not reserved from
the purchase price; and the case above comes within this exception. For cases dis-
cussing this rule, see notes in 8 L.R.A.(N.S.) 814 and 48 L.R.A.(N.S.) 840, on the
right of a vendee of real estate which is subject to a lien, to raise the question of
usury.

On the conflict of laws as to usury, see note in 62 L.R.A. 42.

On commissions charged by lender's agent as usury, see notes in 46 L.R.A.(N.S.)
1157, and 19 L.R.A.(N.S.) 391.

See also note in 55 Am. Rep. 609, on the place where a contract is deemed made
within the meaning of the law respecting usury; notes in 81 Am. Dec. 736 and
46 Am. St. Rep. 178, on what transactions are usurious; note in 55 Am. Dec. 392, on
what is usury and when it is available as a cause of action or defense; and note
in 28 Am. Rep. 491, on who besides the principal debtor may urge the defense of
usury.

On the recovery of a voluntary payment, see note in 94 Am. St. Rep. 408.

performed, result in producing to the lender a rate of interest greater than is allowed by law, and was that result intended?"

**Laws of Minnesota — where payable — control — agreement — loan of money — usury — bonus — amount of loan — remainder — interest — computed on.**

3. When, under the laws of Minnesota, "an agreement" exacts from the borrower a bonus to be paid to the lender for making the loan, that bonus, on the question of usury, must be taken out as of the date when it is to be paid by the terms of the agreement. If payable at the time of advancing the loan, it is for the purpose of determining what rate of interest the agreement reserves to the lender, to be deducted as of that date from the amount of loan nominally agreed upon, and the computations of interest made on the remainder.

**Contract — mortgage loan — usurious — void.**

4. Contract of mortgage loan examined and held to be usurious and therefore void under §§ 2733 and 2735, Revised Laws of Minnesota.

**Contract — avoidance — actual intent — proof of — usury laws of Minnesota — act — necessary consequences of — presumed to intend — rule of.**

5. In order to avoid a contract under the laws of Minnesota, it is not necessary that there should be proof of an actual intent to evade the usury laws, but the rule may be applied that one is presumed to intend the necessary consequences of his acts.

**Usury — personal defense — borrower — or one in privity — can only plead — lien — purchaser of property — full payment — lien not assumed — defense of — may be pleaded.**

6. Though usury is usually a personal defense and can only be pleaded by the borrower or one in privity with him, yet the purchaser of property charged with a usurious lien, who pays his grantor the full purchase price without deducting therefrom the amount of said lien or in any way assuming its payment, may interpose the defense of usury in an action to enforce such lien, and in such case will be deemed to stand in privity of contract and estate with the mortgagor.

**Judgment — obtained — illegally — mortgage foreclosure — land — possession — vacation of — appeal — payment — agent authorized to make — duress — absence of — voluntary payment.**

7. When a person against whom a judgment is illegally though not fraudulently obtained for the foreclosure of land of which he has the possession, and who has an opportunity to move for a vacation of the judgment or to appeal, writes to his agents to pay the claim, stating that he is "desirous of taking no chances as to the determination of his rights," and there is no proof either

of a mistake of law or of fact on his part, and the only duress is the threatened mortgage sale, such a payment will be deemed voluntary and cannot be recovered.

Opinion filed March 27, 1916.

Action to quiet title to land.

Appeal from the District Court of Adams County, *W. C. Crawford*, J.

Judgment for defendants.

Affirmed as to the defenses; but reversed as to counterclaim of S. L. Bennett.

Statement of facts by BRUCE, J.

This is an action to foreclose a real estate mortgage, the defense being usury, and a counterclaim being interposed by one of the defendants. The findings of fact and conclusions of law of the trial court are as follows:

"I. I find that the defendants N. B. Bailey and Elva B. Bailey, his wife, on the 30th day of March, 1909, at the office of the plaintiff in the city of Minneapolis in the state of Minnesota, executed and delivered to the plaintiff their certain promissory note in writing for the sum of $5,000; that said note was to become due November 1, 1914, all the interest and the principal of said note to be paid at the office of the plaintiff in the city of Minneapolis in the state of Minnesota, where all of the conditions of said contract were to be performed; that as security for the payment of said note the defendants N. B. Bailey and Elva B. Bailey, his wife, executed and delivered to the plaintiff their real estate mortgage covering the north half and the southeast quarter of section 5, the west half of section 15, southeast quarter of section 9, the southeast quarter of section 27, and the north half of the southwest quarter of section 33, all in township 131 north, of range 97, west of the fifth (5th) principal meridian, Adams county, North Dakota.

"II. That the said note of $5,000 also provided for the payment of interest at the rate of 6 per cent per annum from date until paid; that the same became due November 1, 1914; that as a consideration for

33 N. D.—32.

the execution and delivery of the said note and mortgage, the said N. B. Bailey and wife received but the sum of $4,500 and some expense money not to exceed the sum of $75, and as commissions for the making of said loan the plaintiff retained the sum of $425 cash, and also in addition thereto received a note for the sum of $600 due November 1, 1909, secured by a second mortgage on the same lands described in the complaint; that the plaintiff furnished its own money for the making of said loan.

"III. That the said $425 cash so .retained by the plaintiff, together with the note and mortgage of $600, were commissions for the making of said note and mortgage for the sum of $5,000 and for which no consideration was given therefor to said N. B. Bailey and Elva B. Bailey; that said commissions so retained and given the plaintiff by said Bailey and wife, together with the 6 per cent interest provided for in the $5,000 note and mortgage, makes the actual loan made to said Bailey and wife draw a rate of interest in excess of the sum of 10 per cent per annum and interest at more than 10 per cent per annum paid for more than one year in advance.

"IV. That thereafter the plaintiff attempted to enforce the collection of the said commission note and mortgage of $600, and secured under the same a judgment of foreclosure in the district court of Adams county, North Dakota, on the 20th day of May, 1911, and under and by virtue of an execution of foreclosure sale, compelled to pay and did make the defendant S. L. Bennett pay the sum of $248.08 on the 4th day of August, 1911, to prevent a sale of the S. E. ¼ of section 5, the S. E. ¼ of section 9, and the S. E. ¼ of section 27, in township 131 north, of range 97 west, of the 5th P. M., lands of the defendant Bennett, and lands covered by said commission mortgage; that said judgment of foreclosure was thereafter, and on the 13th day of February, 1912, duly set aside as null and void by the district court of Adams county, North Dakota, and the plaintiff has failed to return to said S. L. Bennett the said sum of $248.08 and the interest thereon from August 4, 1911.

"V. That on the 4th day of August, 1909, the defendants N. B. Bailey and wife executed and delivered to the defendant J. A. Mulhollam their warranty deed in consideration of the sum of $2,000 for

the N. E. ¼ of section 5 of said lands, which deed was duly recorded in the office of the register of deeds for Adams county, North Dakota, on the 21st day of August, 1909, in book 4 of deeds on page 437, and thereafter the defendant J. A. Mulhollam conveyed by warranty deed said lands to the defendant P. B. Mulhollam; that on the 27th day of May, 1907, the defendant S. L. Bennett purchased from the defendant N. B. Bailey and one C. N. Gorham the S. E. ¼ of section 5, and S. E. ¼ of section 9, and the S. E. ¼ of section 27, of said lands, agreeing to pay therefor the sum of $9,160, and that thereafter said contract was fully performed, and a deed was issued by said N. B. Bailey and wife to said S. L. Bennett for said lands, and said land contract for the sale of said lands and said deed was duly recorded in the office of the register of deeds for Adams county, North Dakota, on the 22d day of December, 1909, in book 5 of deeds on page 106; that the defendant Carrie Lombard is the administratrix of the estate of George M. Lombard, deceased; that the defendant Ralph L. Haskins, on the 23d day of August, 1906, purchased from the defendant N. B. Bailey and said C. N. Gorham the N. ½ of S. W. ¼ of section 33 of said lands, and said contract was recorded in the office of the register of deeds for Adams county, North Dakota, on the 22d day of March, 1910, in book 3 of Misc., on page 205; that the defendants T. C. Richmond, R. W. Jackman, and S. T. Swanson are the owners of a sheriff's deed by virtue of an execution sale against the estate of said Geo. M. Lombard, covering the N. W. ¼ of section 5 of said lands.

"VI. That all of the answering defendants herein have, since the date of the purchase of the said lands as above set forth and before the commencement of this action and prior to the date of the said $5,000 note and mortgage, been paying the taxes on said lands.

"VII. That on the 18th day of September, 1909, the plaintiff released from the operation of this mortgage and also from the operation of the said $600 note and mortgage the W. ¼ of section 15 of said lands for a consideration of the sum of $1,600, $1,500 of which consideration was applied on the $5,000 note and mortgage and $100 was applied on the commission or bonus mortgage.

"VIII. That the plaintiff loaned said sum of $4,500 given to N. B. Bailey for the $5,000 note and mortgage its own money, retaining

therefrom the said $425 cash and the said $600 note and mortgage as a commission and bonus for the making of the said loan. And as conclusions of law I find:

"I. That the note and mortgage in this action are Minnesota contracts; that the same are usurious and void as to the defendants P. B. Mulhollam, J. A. Mulhollam, Geo. M. Lombard, deceased, and Carrie Lombard, as administratrix of the estate of George M. Lombard, deceased, S. L. Bennett, Ralph L. Haskins, T. C. Richmond, R. W. Jackman, and S. T. Swanson.

"II. That there is due and owing the defendant S. L. Bennett, from the plaintiff, on account of the enforced payment to the plaintiff by said S. L. Bennett, the sum of $248.08, with interest at the rate of 7 per cent per annum from and after August 4, 1911, as set forth in the counterclaim of the defendant, S. L. Bennett.

"III. That all of the real property described in the complaint sought to be foreclosed and sold under the note and mortgage, to wit: North half (N. $\frac{1}{2}$) of the southeast quarter (S. E. $\frac{1}{4}$) of section five (5), southeast quarter (S. E. $\frac{1}{4}$) of section nine (9), southeast (S. E. $\frac{1}{4}$) quarter of section twenty-seven (27) and the north half (N. $\frac{1}{2}$) of the southwest quarter (S. W. $\frac{1}{4}$) of section thirty-three (33), all in township one hundred thirty-one (131), north of range ninety-seven (97), west of the fifth (5th) principal meridian, should be freed, discharged, and released from the operation of said mortgage, as claimed to be held by said plaintiff as aforesaid.

"It is ordered, adjudged, and determined that the said answering defendants do have judgment against the plaintiff accordingly, and it is further ordered that the defendant S. L. Bennett do have judgment against the plaintiff on his counterclaim for the sum of $248.08, together with interest thereon at the rate of 7 per cent per annum from and after August 4, 1911; and that these answering defendants do have and recover judgment from the plaintiff herein for their costs and the disbursements of this action to be taxed by the clerk."

From a judgment entered in accordance with these findings and conclusions, this appeal has been taken and a trial *de novo* has been demanded.

*Henry Moen* and *W. A. McDowell,* for appellant.

The defense of usury is purely a personal one. No one can take advantage thereof excepting the debtor himself, or someone standing in privity with the debtor. 39 Cyc. 999.

The mere taking of interest in excess of 10 per cent is not of itself usury. Swanson v. Realization & Debenture Corp. 70 Minn. 380, 73 N. W. 165; 39 Cyc. 918.

The plaintiff, making and securing the loan, had the right to make a legal charge for all its services rendered in such connection. 39 Am. & Eng. Enc. Law, pp. 946, 981; Webb, Usury, § 81.

There was no device, fraud, or deception used or practised in this case, in securing the loan for defendant or throughout the transaction. Swanson v. Realization & Debenture Corp. supra.

There must be an intent to violate the law, to constitute usury; when this is absent the transaction is not usurious, whatever its appearance may be. Ward v. Anderberg, 31 Minn. 304, 17 N. W. 630; Jackson v. Travis, 42 Minn. 438, 44 N. W. 316.

Taking interest in advance for a long time and at the highest rate allowed by law is not usurious. Fleckner v. Bank of United States, 8 Wheat. 338, 5 L. ed. 631; Brown v. Scottish-American Mortg. Co. 110 Ill. 235; Stribbling v. Bank of the Valley, 5 Rand. (Va.) 132; McGill v. Ware, 5 Ill. 21; English v. Smock, 34 Ind. 132, 7 Am. Rep. 215; Rose v. Munford, 36 Neb. 148, 54 N. W. 129; Tepoel v. Saunders County Nat. Bank, 24 Neb. 815, 40 N. W. 415.

Where an illegal demand is made on a person and the law affords him adequate protection against it, or gives him a complete remedy, and he pays what is so demanded, such payment is voluntary. 30 Cyc. 1311.

And such voluntary payment, except where the statute otherwise provides, with knowledge of all the facts, and not induced by fraud or improper conduct on the part of the payee, cannot be recovered back. 30 Cyc. 1313.

Or where a person places a wrong construction on the contract, and makes payments thereunder, he cannot recover back. Cincinnati v. Cincinnati Gaslight & Coke Co. 53 Ohio St. 278, 41 N. E. 239.

To entitle one to the right to recover back, the payment must have been made on a wrongful or unjust claim or demand, coupled with

pressure of actual or threatened restraint or harm, or of actual or threatened seizure of property and of serious import to him, and that his only escape was payment. Kraemer v. Deustermann, 37 Minn. 469, 35 N. W. 276.

But when the law affords to him an adequate remedy, the rule is different. De Graff v. Ramsey County, 46 Minn. 319, 48 N. W. 1135; Joannin v. Ogilvie, 49 Minn. 564, 16 L.R.A. 376, 32 Am. St. Rep. 581, 52 N. W. 217.

*E. C. Wilson, Boem & Jackson,* and *Aylward, Davis, Olbrich, & Hill,* for respondents.

The question of usury can be raised by anyone claiming under and through the obligor in the contract which is tainted with usury, and there is no estoppel. Grove v. Great Northern Loan Co. 17 N. D. 352, 138 Am. St. Rep. 707, 116 N. W. 345; Jones, Mortg. §§ 1493 and 1494; Lloyd v. Scott, 4 Pet. 205, 7 L. ed. 833; Calkins v. Copley, 29 Minn. 471, 13 N. W. 904; Gerdine v. Menage, 41 Minn. 417, 43 N. W. 91; Greene v. Tyler, 39 Pa. 361; Bachdell's Appeal, 56 Pa. 386; Miners Trust Co. Bank v. Roseberry, 81 Pa. 309.

The deeds from Bailey were silent as to this mortgage, and he knew it was void for usury, and that is the reason why it was ignored in making the deeds. Shufelt v. Shufelt, 9 Paige, 145, 37 Am. Dec. 381.

Where a large part of the interest on a long-time loan is deducted in advance, and for the full period, interest thereafter can only be computed on the balance received by the borrower. Smith v. Parsons, 55 Minn. 520, 57 N. W. 311; Carpenter v. Lamphere, 70 Minn. 542, 73 N. W. 514; Robinson v. Blaker, 85 Minn. 242, 89 Am. St. Rep. 541, 88 N. W. 845; Hagan v. Barnes, 92 Minn. 128, 99 N. W. 415; Nelson v. Satre, 111 Minn. 60, 126 N. W. 399.

The law presumes that one intends the necessary and usual consequences of his act, and no direct proof of actual intent is required. Swanson v. Realization & Debenture Corp. 70 Minn. 380, 73 N. W. 165.

The complaint contains the allegation that no action or proceeding at law or otherwise has been had to recover the debt, but there is no proof of this fact. Not only is it necessary to allege this fact, but it must be proved. Comp. Laws 1913, § 8103; Fisher v. Bouisson, 3

N. D. 493, 57 N. W. 505; Drury v. Roberts, 2 Neb. (Unof.) 574, 89 N. W. 600.

The defendant Bennett should be refunded by plaintiff the money paid by him under the prior action, to prevent sale of his land under execution. Minn. Rev. Laws, §§ 2733 and 2735; Missouri, K. & T. Trust Co. v. McLachlan, 59 Minn. 468, 61 N. W. 560.

"The test of the question of usury is, "Will the contract, if performed, result in producing to the lender a rate of interest greater than is allowed by law, and was such result intended?" Smith v. Parsons, 55 Minn. 520, 57 N. W. 311.

The contract in question is void under the laws of Minnesota. It must be construed under such laws, for their performance was to be made.

"A contract, illegal by the laws of the place of performance, is illegal everywhere." Kennedy v. Cochrane, 65 Me. 594; Jewell v. Wright, 30 N. Y. 259, 86 Am. Dec. 372; Philson v. Barnes, 50 Pa. 230; Lewis v. Headley, 36 Ill. 433, 87 Am. Dec. 227; Akers v. Demond, 103 Mass. 318; Newman v. Kershaw, 10 Wis. 333.

A purchaser of lands who has bought not merely the equity of redemption, but the whole title, paying the full price, with no reduction on account of the mortgage, may set up usury as a defense. Jones, Mortg. § 1494; Camden F. Ins. Co. v. Reed, — N. J. Eq. —, 38 Atl. 667; Hallam v. Telleren, 55 Neb. 255, 75 N. W. 560; Cobe v. Summers, 143 Mich. 117, 106 N. W. 707; Crawford v. Nimmons, 180 Ill. 143, 54 N. E. 209.

Where there is no agreement or understanding about it, the grantee of a mortgagor may plead usury as a defense to the mortgage debt. Newman v. Kershaw, 10 Wis. 335; Calkins v. Copley, 29 Minn. 471, 13 N. W. 904; Gerdine v. Menage, 41 Minn. 417, 43 N. W. 91; Lilienthal v. Champion, 58 Ga. 158; Union Bank v. Bell, 14 Ohio St. 200; Maher v. Lanfrom, 86 Ill. 513; Porter v. Parmley, 52 N. Y. 185; Banks v. McClellan, 24 Md. 62, 87 Am. Dec. 594; M'Alister v. Jerman, 32 Miss. 142; Bullard v. Raynor, 30 N. Y. 200; Grove v. Great Northern Loan Co. 17 N. D. 352, 138 Am. St. Rep. 707, 116 N. W. 345.

It is no defense to an action to set aside a mortgage as usurious, that there was no intent on the part of the defendant to evade the usury

laws. Brolasky v. Miller, 9 N. J. Eq. 807; Magie v. Reynolds, 51 N. J. Eq. 113, 26 Atl. 150; Brooks v. Avery, 4 N. Y. 225; Lloyd v. Scott, 4 Pet. 205, 7 L. ed. 833; Doub v. Barnes, 1 Md. Ch. 127; Shufelt v. Shufelt, 9 Paige, 145, 37 Am. Dec. 381; Shankland v. Nelson, 1 Tenn. Ch. 459; Wightman v. Suddard, 93 Ill. App. 142; Mason v. Pierce, 142 Ill. 331, 31 N. E. 503; Hagan v. Barnes, 92 Minn. 128, 99 N. W. 415; Exley v. Berryhill, 37 Minn. 182, 33 N. W. 567; Carpenter v. Lamphere, 70 Minn. 542, 73 N. W. 514; Robinson v. Blaker, 85 Minn. 242, 89 Am. St. Rep. 541, 88 N. W. 845; Hagan v. Barnes, 92 Minn. 128, 99 N. W. 415.

In making a contract, the names or forms used are unimportant. There can be no device or shift under or behind which the law will not look to ascertain the real character of the transaction. Lukens v. Hazlett, 37 Minn. 441, 35 N. W. 265; Phelps v. Montgomery, 60 Minn. 303, 62 N. W. 260; Scott v. Austin, 36 Minn. 460, 32 N. W. 89, 864; Chase v. Whitten, 51 Minn. 485, 53 N. W. 767; Widell v. National Citizens' Bank, 104 Minn. 510, 116 N. W. 919; Elwell v. Lund, 102 Minn. 166, 112 N. W. 1009, 1067.

The plaintiff obtained from defendant Bennett a large sum of money, wrongfully and illegally, paid by him under duress, to prevent an unlawful sale under an execution, the judgment afterwards being vacated. Defendant's counterclaim for this money should, in a court of equity, and under the facts here presented, be returned. National Surety Co. v. Walker, — Iowa, —, 117 N. W. 1114; Buford v. Briggs, 96 Ark. 150, 131 S. W. 351; Hinchman v. Ripinsky, 121 C. C. A. 35, 202 Fed. 625; Northwestern Fuel Co. v. Brock, 139 U. S. 216, 35 L. ed. 151, 11 Sup. Ct. Rep. 523; Standard Furniture Co v. Van Alstine, 31 Wash. 499, 72 Pac. 119; Ætna L. Ins. Co. v. Flour City Ornamental Iron Works, 120 Minn. 463, 139 N. W. 955; Harrigan v. Gilchrist, 121 Wis. 127, 99 N. W. 909; Bank of United States v. Bank of Washington, 6 Pet. 8, 8 L. ed. 299.

One who obtains and enforces a judgment which is afterwards reversed on law, or set by the trial court from fraud or mistake, may be required to make restitution to the party injured. Clark v. Pinney, 6 Cow. 297; Scholey v. Halsey, 72 N. Y. 578; Haebler v. Myers, 132 N. Y. 363, 15 L.R.A. 588, 28 Am. St. Rep. 589, 30 N. E. 963; Chambliss v. Hass, 125 Iowa, 484, 68 L.R.A. 126, 101 N. W. 153, 3 Ann.

Cas. 16; Bank of United States v. Bank of Washington, 6 Pet. 17, 8 L. ed. 304; Sturges v. Allis, 10 Wend. 355; Maghee v. Kellogg, 24 Wend. 32; Norton v. Coons, 3 Denio, 130; Langley v. Warner, 1 Sandf. 209; Cowdery v. London & S. F. Bank, 96 Am. St. Rep. 143, note; Bickett v. Garner, 31 Ohio St. 28; Florence Cotton & Iron Co. v. Louisville Bkg. Co. 138 Ala. 588, 100 Am. St. Rep. 50, 36 So. 456; Chicago & S. E. R. Co. v. Adams, 26 Ind. App. 443, 59 N. E. 1087; Murphy v. Casselman, 24 N. D. 336, 139 N. W. 802.

Bruce, J. (after stating the facts as above). The main question for determination in this case is whether the loan was tainted with usury.

It is conceded that though the land was situated in North Dakota, both the mortgagor and the mortgagee were nonresidents, the latter living in Wisconsin and the former in Minnesota; that the contract was to be performed in Minnesota, and that therefore, and on the question of usury, the Minnesota, and not the North Dakota, statute will apply.

It is conceded that the statutes of the state of Minnesota on the subject of usury were and are as follows: "Section 2733. The interest for any legal indebtedness shall be at the rate of $6 upon $100 for a year, unless a different rate is contracted for in writing; and no person shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater sum, or any greater value, for the loan or forbearance of money, goods, or things in action, *than $10 on $100 for one year;* and in the computation of interest upon any bond, note or other instrument or agreement interest shall not be compounded, but any contract to pay interest, not usurious, upon interest overdue shall not be construed to be usury," etc. Rev. Laws 1905.

"Section 2735. All bonds, bills, notes, mortgages, and all other contracts and securities whatsoever, and all deposits of goods, or any other thing, whereupon or whereby there shall be reserved, secured, or taken any greater sum or value for the loan or forbearance of any money, goods, or things in action than hereinbefore prescribed, shall be *void,* except as to bona fide purchasers of negotiable paper, in good faith, for a valuable consideration and before maturity, as hereinafter provided," etc.

It is settled by the supreme court of Minnesota that "the test . . .

[of usury in such a case] is, Will the contract, if performed, result in producing to the lender a rate of interest greater than is allowed by law and was that result intended?" Smith v. Parsons, 55 Minn. 520, 57 N. W. 311.

It is also settled that "when the agreement exacts from the borrower a 'bonus' to be paid to the lender for making the loan, that, on the question of usury, must be taken out as of the date when it is to be paid by the terms of the agreement. If payable at the time of advancing the loan, it is, for the purpose of determining what rate of interest the agreement reserves to the borrower, to be deducted as of that date from the amount of loan nominally agreed upon, and the computation of interest made on the remainder." Ibid.; Rantala v. Haish, — Minn. —, 156 N. W. 666.

If we apply these considerations to the case at bar, there can be no question of the usurious nature of the transaction. Being usurious, the contract was, under the Minnesota law, absolutely void. We are not here called upon to say what would be the law in Minnesota upon the subject if the sum reserved were a legitimate commission to be paid by the borrower for the services of the go-between in inducing some third person to make the loan, as such fact cannot be and is not claimed in this case. According to plaintiff's own witness, Stabeck, the excess sum was retained for "commission and services in negotiating the loan." The loan, however, was admittedly advanced out of plaintiff's own money, and the mortgages and notes were never negotiated or sold. Plaintiff now seeks to collect the full-face value of his notes, and has never at any time offered to return the commission not earned and which he himself says was for "negotiating the sale of the loan." There can indeed be no question that the bonus was retained as interest, and not as commission or as compensation for services rendered.

Nor is there any merit in plaintiff's claim that the bonus of $1,000 was for services rendered in clearing the title to the land and sending a special examiner to visit the same. Not only is the charge palpably exorbitant for any such a purpose; not only is there no evidence of these expenses or proof of any real services rendered, or of services which could ever amount in value to the amount claimed,—but plaintiff's witness, Stabeck, expressly testifies that a part of the claim at

least was for services or commission in negotiating the loan, which was in fact never negotiated.

His testimony on this point is conclusive against him and his firm. It was:

Q. Now, Mr. Stabeck, I believe you testified that the execution and delivery of the $600 note and mortgage was a part of the transaction by which you loaned Mr. Bailey this.$5,000 loan secured by the note and mortgage in this action?

A. Yes, sir.

Q. Now, what was this $600 note and mortgage, what was it for?

A. It was for commission and part of the services for negotiating the loan.

Q. You paid no cash for the $600 note and mortgage, as I understand it?

A. No, sir.

Q. And this simply represents commission that Mr. Bailey paid to the Gold-Stabeck Land & Credit Company for securing this loan?

A. For commission and services in negotiating the loan, yes, sir.

Q. Well, principally commission, isn't it?

A. No, not any more commission than for services for negotiating the loan for him.

Q. Well, what were the services?

A. Looking up the land title, getting the papers executed and the payment of prior encumbrances, examination of abstracts, *negotiating the sale of the loan.*

Q. Now, whose money was it that you were loaning?

A. *We put our own money into it temporarily until we sold the loan.*

Q. So you made a loan out of your own money for $5,000, and as commission and services you took a second mortgage of $600 secured by a mortgage covering the same land?

A. We were to procure Mr. Bailey a loan of $5,000. We took this $600 mortgage in connection with it.

Q. Without any additional cash being paid to Mr. Bailey?

A. Yes, sir.

Q. Now, Mr. Stabeck, how much money did you pay Mr. Bailey at the time of the execution and delivery of this.$5,000 note and mort-

gage after you had examined the title and found that it was a first mortgage of record on this land?

A. Read that over.

(Question read.)   Now, Mr. Stabeck, how much money did you pay Mr. Bailey at the time of the execution and delivery of this $5,000 note and mortgage after you had examined the title and found that it was a first mortgage of record on this land?

A. I couldn't say offhand just when the payments were made.   It might have been paid before, part of them, and part of them might have been paid afterwards.

Q. Now, I don't think that is responsive to the question.   How much money did you pay Mr. Bailey for this $5,000 loan?

A. Five thousand dollars.

Q. Are you sure of that?

A. Yes, sir, with the exception of a few dollars recording fees and taxes that we paid out, the balance of the money went to him.   I will change that.   A deduction for some additional commission there that I had forgotten about.

Q. What was that additional commission, Mr. Stabeck?

A. What was the amount?

Q. Yes.

A. *Four hundred dollars.*

Q. What did that represent?

A. *That represented an additional amount for placing the loan and the work we done in connection with it.*

Q. Now, can you testify and tell this court just how much money you did pay Mr. Bailey for this $5,000 note and mortgage and the $600 note and mortgage?

A. We paid him $5,000 less the $400 and the few dollars recording fees and taxes that we paid for him.

Nor is it necessary, as contended by appellant, at any rate under the laws of Minnesota, that there shall be proof of an actual intent to evade the usury laws.   The plaintiff must be presumed to have been cognizant of the laws of Minnesota and to have intended the necessary consequences of its acts, and the natural inferences must be made from these acts.   Plaintiff must have intended usury, or at any rate that

the greater part of the so-called bonus should be interest and not compensation for services rendered. Otherwise why, and when it knew it had not sold the mortgage, did it seek on its foreclosure to collect for the commission which it claimed was reserved for services in making the sale?

The case at bar indeed seems to be definitely decided against the appellant, not only by the prior decisions of the Minnesota court, but by the recent case of Rantala v. Haish, — Minn. —, 156 N. W. 666, and which was handed down since the argument. This case not only is decisive of the main question before us, but answers in the negative the contention of counsel for appellant that as far as the facts of the case at bar are concerned, the Minnesota decision in Smith v. Parsons, 55 Minn. 520, 57 N. W. 311, has been overruled by Swanson v. Realization & Debenture Corp. 70 Minn. 380, 73 N. W. 165, and Commonwealth Title Ins. & T. Co. v. Dakko, 89 Minn. 386, 94 N. W. 1088.

Plaintiff also claims that the defendant Carrie Lombard does not plead usury and therefore has waived the point. In this counsel is in error. Usury is pleaded.

The same objection is made concerning the defendant Korst. It is true that no defense of usury is pleaded by him. He, however, at no time assumed the mortgage, and his interest is merely under a land contract from the defendant J. B. Mulhollam, the interest in which had been assigned to P. B. Mulhollam. P. B. Mulhollam raised the point in his answer and pleaded the defense, and we think that is sufficient.

We next come to the contention of plaintiff and appellant, that the defense of usury was personal to the mortgagor, Bailey, and cannot be taken advantage of by the defendants in this case.

There is no merit in this contention, and plaintiff only cites one authority in support thereof, which is 39 Cyc. 999. He fails entirely to cite 39 Cyc. 1068 and 1069, which qualifies the statement which is made in 39 Cyc. 999, and which is directly opposed to his contention. The rule is that though usury is usually a personal defense and can only be pleaded by the borrower, or one in privity with him, yet the purchaser of property charged with a usurious lien can allege the usury and defeat the claim when the sale was made free from the usurious lien, and that in such cases "the purchaser is permitted to

defend as against usury on the ground that he stands in privity of contract and estate with the mortgagor." In the case at bar there was no assumption of the mortgage by any of the grantees, nor was the amount of the mortgage deducted from the purchase price, but the full amount was paid in every case. In such cases the law is settled that the defense of usury may be interposed by the purchaser. Grove v. Great Northern Loan Co. 17 N. D. 352, 138 Am. St. Rep. 707, 116 N. W. 345; 39 Cyc. 1068, 1069; Crawford v. Nimmons, 180 Ill. 143, 54 N. E. 209; Jones, Mortg. § 1494.

We now come to the counterclaim of the defendant Bennett, which alleges that before the beginning of the present action the plaintiff had commenced an action against the defendant Bennett and others for the foreclosure of a certain pretended mortgage, arising out of the same transaction, as the mortgage sought to be foreclosed in the present action, and that as a result of said action and on or about April 15, 1911, a judgment was entered for the foreclosure of said pretended mortgage, and ordering and decreeing a sale of the premises, and that pursuant to said judgment the said premises were offered for sale and advertised to be sold by the sheriff of Adams county, North Dakota, on June 19, 1911; that by reason of said judgment and order, the defendant Bennett was compelled to pay and did pay to the clerk of the district court for Adams county the sum of $248.08 on June 9, 1911, in order to satisfy said judgment and to prevent a sale of the premises. That on February 13, 1912, the said pretended judgment and order of sale based thereon were duly and regularly set aside by the district court of the tenth judicial district of the state of North Dakota; that said sum of $248.08 has not been repaid and that the defendant Bennett demands judgment for the same.

The question as to whether the defendant S. L. Bennett is entitled to recover on this counterclaim is dependent entirely upon the question whether this was or was not a voluntary payment. Plaintiff maintains, and the proof no doubt shows, that at the time of the payment by Bennett the other defendants were at the time settling the case preparatory to a motion for a new trial or appeal. That the defendant Bennett wrote to his attorney that he did not care to take the risk of future litigation, and preferred to make the payment at that time. The proof shows that the defendant took no part in the proceedings

that led to a reversal of the judgment, though he was made an adverse party in such proceedings and served with notice. Plaintiff maintains that defendant had no legal right to make the payment of $248.08 and obtain a release of the land he owned from the lien of the mortgage; that the company was under no legal obligation to accept such payment and release the mortgage, and that, though there was no direct evidence of an adjustment, the payment can only be considered to have been maed for such a purpose. He maintains that "the general rule is that where an unfounded or illegal demand is made upon a person and the law furnishes him adequate protection against it, or gives him an adequate remedy, instead of taking the protection the law gives him or the remedy it furnishes, he pays what is demanded, such payment is deemed to be a voluntary one." See 30 Cyc. 1311.

We believe that the plaintiff and appellant is correct in this contention, and that the case of Wessel v. D. S. B. Johnston Land & Mortg. Co. 3 N. D. 160, 44 Am. St. Rep. 529, 54 N. W. 922, is decisive of the question which is before us. In that case this court held that where a party in possession, and with full knowledge of all the facts, pays to the proper officer the money necessary to redeem certain real estate from a foreclosure sale by advertisement, which sale was made after the lien of the mortgage had been fully satisfied and destroyed, and where such payment is made for the sole purpose of preventing the execution of a deed to the purchaser at the foreclosure sale which would create an apparent cloud upon the title, such payment is voluntary, and cannot be recovered. In passing upon this question this court said: "We deem it a well-settled rule of law that where a party with full knowledge of the facts pays a demand that is unjustly made against him and to which he has a valid defense, and where no special damage or irreparable loss would be incurred by making such defense, and where there is no claim of fraud upon the part of the party making such claim, and the payment is not necessary to obtain the possession of the property wrongfully withheld, or the release of his person, such payment is voluntary and cannot be recovered." This court also in its opinion quoted from the case of Shane v. St. Paul, 26 Minn. 543, 6 N. W. 349, where the Minnesota court said: "The execution and de'ivery of a tax deed in accordance with the alleged threat could work no disturbance of that possession, for being founded upon a judgment

void upon its face, its invalidity could always be shown to defeat any claims that might at any time be asserted under it. There was, therefore, no necessity for plaintiff to make any redemption in order to protect his possession of the property, neither was he required to do so to avoid any injurious consequences which might arise by reason of the apparent cloud which might be cast upon his title, for upon the facts stated he had a perfect and adequate remedy by action for the removal of such apparent cloud whenever created."

There is no proof whatever that the defendant Bennett paid the money through a mistake either of fact or of law, nor on account of an actual or necessary duress of property. "Not having heard from you in the Bailey-Bennett matter," write his lawyers when making payment, "and being desirous of taking no chances as to the termination of our rights, we are inclosing herewith our check in the sum of $250, the same to be used by you to satisfy our *pro rata* share of the Gold-Stabeck judgment and prevent the sale of the Bennett lands on foreclosure."

The defendant Bennett was in possession, and there is no proof that there was any immediate danger of that possession being interfered with. He had an adequate remedy at law, as the record clearly showed that the plaintiff had in fact no lien as against him, and his codefendants were already preparing the motion which afterwards led to the reversal of the judgment. The case, therefore, comes squarely within the ruling in the case of Wessel v. D. S. B. Johnston Land & Mortg Co. just cited.

We are not unmindful of our decision in Murphy v. Casselman, 24 N. D. 336, 139 N. W. 802. A perusal of that case, however, will, we believe, clearly distinguish it both from the case of Wessel v. Johnston Land & Mortg. Co. supra, and the Minnesota case of Shane v. St. Paul. Both of the latter cases indeed are sought to be distinguished therein.

It follows from the above that that part of the judgment of the district court which provides "the defendant S. L. Bennett to have and recover from the plaintiff judgment on his counterclaim for the sum of $299.96, principal and interest, on the sum of $248.08, paid to the plaintiff by said defendant, S. L. Bennett, on the 4th day of August, 1911," must be reversed and set aside, and that in all other respects the judgment of the district court must be affirmed.

As against the defendant Bennett, the plaintiff and appellant will be allowed the sum of $15 for its costs and disbursements upon this appeal. As between the appellant and all other parties to this appeal, the costs and disbursements will be taxed against the appellant. This decision does not affect the rights or pass upon the rights of any of the defaulting defendants.