John M. Peschel filed a claim against Richland county in the sum of $515.70, for the return of certain drivers' license fees previously paid by him in to the county treasury. The claim was rejected by the board of county commissioners "on the ground that the law involved in the claim must be determined by the courts." Peschel appealed to the district court where judgment was rendered against the county. From that judgment, the county now appeals to this court.
The money involved represents a fee of 10c collected from each applicant for a driver's license by Mr. Peschel who was and is clerk of the district court of Richland county. Collections were made pursuant to the provisions of chapter 175, N.D. Session Laws 1935. The collections were made during 1935 and 1936. The facts are stipulated. Two questions are presented. The first is whether the fee of 10c per license charged and collected under the provisions of the law above cited belonged to the county or may be retained by the clerk of court as his individual remuneration for the services performed. The second question is whether this money, assuming it belonged to the clerk individually, was paid under protest or compulsion and may be recovered.
The stipulation of facts discloses that on or about April 15, 1935, the clerk of court received a letter from the state examiner of the state of North Dakota whose duty it was to examine and audit the clerk's books. This letter advised regarding the fees in question: "We have now obtained an opinion from the Attorney General's office to the effect that all such fees collected must be turned over to the county by the officer collecting same, and in order to facilitate the checking of this revenue by our examiners it will be necessary that all such fees be entered in a satisfactory form of miscellaneous fee book." After receiving this letter, the clerk of court went to the office of the county treasurer of Richland county. At that time there were present a deputy state examiner and a number of other persons including the sheriff of said county. *Page 18 
The clerk stated that he believed that the fees in question belonged to him whereupon the deputy examiner informed him and the sheriff that "`all the fees so collected were not their private property, but that same were public funds and must be accounted for and immediately turned in to the county treasurer, as he the said Math J. Kraker was going to check their offices including these funds'" and further stated, "`All the fee money collected, or to be collected, including the 10 cents must be accounted for the same as any other funds collected by them as clerk and sheriff respectively.'" The deputy examiner then proceeded to audit and check the books of the clerk of court and included the disputed funds in his examination. Whereupon the clerk stated in substance that he believed that he was entitled to the fees but would turn them over to the county treasurer against his free will because he could not afford to have trouble with the examiner's office and did not want to be placed in the position of withholding public money and that the only reason he was turning these funds over was because he was ordered to do so. No written protest was made.
We now take up the question of whether the funds belonged to the county or were the property of the clerk individually. Chapter 175, N.D. Session Laws 1935, provides for the issuance of driver's licenses for operating certain motor vehicles. Under that act, licenses were issued by the state highway commissioner who was charged with responsibility for the administration and execution of the law. The following sections we quote as being particularly pertinent to this controversy:
§ 5. "Clerk of court may receive applications. Any applicant for a license may file his application with the clerk of the district court or the sheriff of the county in which he resides and such clerk or sheriff is hereby authorized to receive and accept the same upon the payment by the applicant to such clerk or sheriff of an additional fee of 10 cents for such service. The clerk or sheriff shall then immediately forward such application to the commissioner, together with the fee of 25 cents."
§ 17. "State highway commissioner may appoint agent. Any duties required of, or powers conferred on the state highway commissioner under the provisions of this act may be done and performed or exercised by any of his duly authorized agents." *Page 19 
John M. Peschel was appointed by the state highway commissioner as his agent for the years 1935 and 1936, and as such agent issued driver's licenses and acted pursuant to the authority of his appointment. All the license money collected except the 10c fee permitted by law was paid to the North Dakota state highway commissioner.
The County Officers' Salary Reduction Law, an initiated measure approved by popular vote June 29, 1932 (page 497, N.D. Session Laws 1933), fixes the salaries of county officers including the clerks of district courts. Section 8 of the law provides that: "The salaries fixed by this act shall be full compensation for all said officials, deputies, clerks and assistants respectively, and all fees and compensation received for any act or service rendered in official capacity, shall be accounted for and paid over by them monthly to the county treasurer and be credited to the general fund of said county."
The appellant contends that the words "may" and "authorized" as used in § 5 of chapter 175, N.D. Session Laws 1935, with respect to clerks of court and sheriffs must be given a mandatory construction. In support of this contention, State v. Barry,14 N.D. 316, 103 N.W. 637, and Thorson v. Weimer, 59 N.D. 457, 230 N.W. 596, are cited. These cases are authority for the general rule that words that are commonly and generally used as permissive may sometimes be construed to have a directive or mandatory meaning in specific instances. However, in construing such words, we must also bear in mind the rule that the legislature is presumed to have used them in their common and generally accepted meaning. It is only when the contrary appears by the context and the purpose of the statute of which they are a part that the rule contended for by the appellant may be applied. In both the cases cited, permissive language was held to be mandatory because of the obvious intent of the legislature. In Thorson v. Weimer, supra, it is said that "no good purpose would be subserved by reviewing the decisions, either in this jurisdiction or elsewhere, dealing with the question when the word `may' must be construed as mandatory rather than permissive. It is sufficient to say that this question, like every other question of statutory construction, resolves itself to one of ascertaining and giving effect to the true intent and object of the legislature in enacting the statute." *Page 20 
The words "may" and "authorized" are generally used in a permissive sense rather than mandatory. There is nothing in the statute to indicate that the legislature intended to use them in a different sense or that a mandatory meaning must be ascribed to them in order to carry out the objects and purposes of the law in which they are found.
In this state it is the general rule that fees received by county officials for the performance of acts that are wholly voluntary and are not a part of their official duties may be retained by the officers as their individual remuneration for the services rendered. Sargent County v. Sweetman, 29 N.D. 256, 150 NW 876; Dickey County v. Austin, 61 N.D. 309, 237 N.W. 831; Stutsman County v. Wright, 41 N.D. 167, 170 N.W. 326. In the first two cases it is held that the furnishing of certified copies of records by a county judge is not an official act exacted by law and the officer is entitled to retain money collected for such services. In Stutsman County v. Wright, supra, it was held that a sheriff is not required to turn over to the county fees received for making sales upon foreclosure of chattel mortgages by advertisement. In arriving at this conclusion the court said: "We do not believe, however, that the sheriff is required to account for or to pay over any fees which he may have received upon the foreclosure of chattel mortgages by advertisement. It is no part of a sheriff's duty to make foreclosure sales of chattel mortgages by advertisements. Under the provisions of the statute, such sales may be made by the owner of the mortgage or his agent or attorney. Comp Laws 1913, § 8126. Manifestly, a sheriff who makes such foreclosure does not act in his official capacity as a sheriff. Surely there would be no liability upon his official bond for any neglect of duty in connection with the sale or failure to account for the proceeds. In making such sale, the sheriff acts as an individual. He does not act in his official capacity, and there seems to be no more reason why he should be required to account for what he receives in making such sales than to require him to account for moneys received by him for performing any other service which he performs in an individual capacity."
In the recent case of Nueces County v. Currington (Tex Civ App) 151 S.W.2d 648, the county sought to recover from the county tax collector, fees received by him for issuing certificates to the effect that there were no delinquent taxes against certain lands. It was held *Page 21 
the county was not entitled to recover these fees even though the county tax collector or her deputies issued the tax certificates in question during office hours. The court took the view that the fees collected were not the property of the county but intimated that the county might maintain a suit against the collector upon other grounds.
In reaching the conclusion that the county is not entitled to the fees here involved, the trial court comments in his memorandum opinium as follows: "It will be noticed that this is not a duty cast upon either of these officials; he may or may not perform the service, as he sees fit. It is not an ordinary or usual duty of such office, it has nothing to do with the acts for which either or these offices were created and is not germane to or related to the duties of these officials. The service is as entirely foreign to their office as it is to the business of a bank or a grocery store. There is nothing in the 1935 law directing or compelling a sheriff to issue these licenses nor is it by any course of reasoning a part of the natural and ordinary duty of a sheriff. It is extra-official, unrelated service. No provision is made for extra office help or for payment otherwise of the studendous amount of extra service which a sheriff must give to this work if he sees fit to engage in it. It is not of a character that requires an act by a sheriff or a clerk of court in these official capacities. Instead of applying directly to the Highway Department driver was permitted to apply to these designated persons, officials or others. Innumerable other persons as agents of the Highway Department performed similar services throughout the State, retaining the 10c fee for their work."
It is important to note that the clerk of court was appointed by the state highway commissioner as his agent under the provisions of § 17 of the act in question. He did not receive applications for driver's licenses and forward them to the commissioner under the provisions of § 5 but as agent of the commissioner actually issued the licenses. This agency was not one that the statute required to be vested in any public official. It appears from the facts in this case that the services rendered were performed under the provisions of § 17 rather than § 5. As we construe § 5, the language is permissive. It did not impose upon the clerk any duty official or otherwise to act thereunder. The fact that he accepted an appointment as agent of the state highway commissioner and *Page 22 
under that authority not only received applications but actually issued the licenses indicates that he performed the services as agent of the commissioner and not by virtue of the authority vested in him under the provisions of § 5. This leads to the conclusion that the services rendered had no connection with his official capacity as clerk of the district court but were rendered solely as an individual pursuant to the powers of his appointment. The fees that he charged and collected were not received for any act or service rendered in his official capacity. They belonged to him individually and he was entitled to retain them.
We next come to the question of whether the moneys paid to the county treasurer can be recovered. If the payments were wholly voluntary there can be no recovery even though they may have been paid under mistake of law. Wessel v. D.S.B. Johnston Land 
Mortg. Co. 3 N.D. 160, 54 N.W. 922, 44 Am St Rep 529; Gold-Stabeck Loan Credit Co. v. Kinney, 33 N.D. 495, 157 N.W. 482. On the other hand, if the payments were made under compulsion they may be recovered even though no formal written protest was made. Diocese of Fargo v. Cass County, 28 N.D. 209, 148 N.W. 541.
In this case the money in question was claimed to be public money. It had been collected by a public officer whose statutory duty it was to pay all public moneys collected by him over to the proper custodian thereof. If the money belonged to the county it was his duty to pay it in to the county treasury. The clerk of court was confronted with a demand on the part of the state examiner's office that the money be paid over. The state examiner had already written a letter in which it was stated that the attorney general of the state had ruled that the money belonged to the county. An examination of the books of the clerk's office was about to be made. If the clerk withheld the money and should be unable to sustain his claim of lawful right thereto he would place himself in a position where he might be charged with official misconduct. He might be prosecuted for the commission of felony and would undoubtedly be publicly criticized as a malfeasant. His personal standing and his official reputation were in jeopardy. Under these circumstances it clearly appears that the payments were involuntary.
In this connection it is well to note the case of Burlingame v. Hardin County, 180 Iowa 919, 164 N.W. 115. This case involves a suit by the *Page 23 
clerk of the district court to recover from the county fees that he was entitled to as an individual but had paid in to the county treasury accompanied by a written statement that in case the fees should be found to be property belonging to him he would expect their return. The court said: "The plaintiff was a public officer, who had presumably given an official bond which he was bound to protect; the legal question between him and the county was one of some intricacy and importance, and had not been directly passed upon or expressly settled either by statute or the decision of this court. To refuse the demand made upon him was to invite possible charges of a criminal character against himself and civil suit against his sureties. An adjustment by which he could place the money or security in the hands of the treasurer, subject to repayment if he should succeed in establishing his personal right thereto, was both honest and fair, and the court should be slow to declare it of no effect. There is no reason in law or good morals why the county should, under such circumstances, be permitted to retain the money if, as a matter of law, it had no legal right to demand or exact it. The payment made with the reservation of the right to try out the question in a civil action protected the county perfectly, and at the same time gave plaintiff an opportunity to save himself from loss in case his title to the money should finally be upheld."
The clerk of court in the case before us, in good faith, believed that the fees involved herein were his property. The public through the state examiner's office laid claim to the money in behalf of the county. He is to be commended rather than penalized for paying the money in to the county treasury and then seeking to determine his rights in the courts. We have determined that this money rightfully belonged to the clerk of court. It further clearly appears from this record that he did not pay the money in to the county treasury voluntarily but did so because of the demand made upon him and the circumstances under which he found himself as a public officer. The county was not entitled to the money in the first instance. Neither is it entitled to retain it upon the technical and unsubstantiated ground of voluntary payment.
The appellant also suggests that the court should hold that the clerk of the district court is not entitled to recover the fees in question because he is estopped by his failure to seek recovery with greater promptness. *Page 24 
While this is an appeal from the action of board of county commissioners in denying the claim for repayment, it is in the nature of a law action for the recovery of money. No statute of limitations has run. We can see no reason why the court should apply to this case a limitation by estoppel or otherwise different from that which would apply to any other similar action for the recovery of money whether it be against the county or against an individual. The judgment appealed from is affirmed.
BURKE, NUESSLE and CHRISTIANSON, JJ., concur.