## DIOCESE OF FARGO, a Corporation, v. COUNTY OF CASS, a Corporation.

(148 N. W. 541.)

**County courts — fees of paid — statute unconstitutional — may be recovered as an involuntary payment — mandamus — formal protest not necessary.**

1. Fees wrongfully exacted under an unconstitutional statute, by the county judge by virtue of his official position, for the filing of the inventory and

Note.—The decision in FARGO v. CASS, sustaining the right to recover back money illegally exacted by a public officer for the performance of his official duty, is in harmony with the other authorities, as shown by a note in 15 L.R.A.(N.S.) 183, the courts acting on the principle that a payment made to a public officer who has the power of compulsion behind him, or a payment exacted by an officer *colore officii*, is never to be deemed a voluntary act, it being considered that the parties do not stand on terms of equality.

28 N. D.—14.

appraisement of decedent's estate, required to be filed within a given time in order that the executor might proceed, may be recovered as involuntarily paid, although the filing could have been compelled by mandamus, and although such fees were thus paid without any formal protest.

**Public officer — money exacted by — excess of legal fees — compulsory payment.**

2. Money exacted by a public officer and paid in excess of his legal fees in order to obtain the performance of his official duty, to which the payer is entitled without such payment, is compulsory, and may be recovered back, and in such a case it is not necessary that the payer should have protested against such payment.

Opinion filed July 24, 1914.

Appeal from District Court, Cass County, *Charles A. Pollock,* J.

From an order overruling a demurrer to the complaint, defendant appeals.

Affirmed.

*A. W. Fowler* (State's Attorney) Fargo, N. D., for appellant.

*Pfeffer & Pfeffer,* Fargo, N. D., for respondent.

FISK, J. This is an appeal from an order of the district court of Cass county overruling a demurrer to the complaint. The complaint embraces two causes of action for the recovery of certain moneys exacted and paid by plaintiff's assignor as an alleged probate tax upon the estate of the late Bishop Shanley by Archbishop Ireland, the executor and sole beneficiary under the will of the late Bishop Shanley. The total amount of fees or so-called probate taxes which were exacted and paid as aforesaid is $1,110, and the same were exacted and paid pursuant to the provisions of chapter 119, Laws 1909, which statute was recently held unconstitutional in the case of Malin v. Lamoure County, 27 N. D. 140, 50 L.R.A.(N.S.) 997, 145 N. W. 582. It is apparent, judging from the large fee or tax thus exacted and paid, that the estate is a large one, amounting approximately to $225,000. The complaint, among other things, alleges the following facts:

## VI.

"That on the 2d day of May, 1910, at the time the inventory and

appraisement of the estate of said John Shanley, deceased, was presented to the county court of the county of Cass, North Dakota, for the purpose of filing, and further proceeding with the administration of the estate of said John Shanley, deceased, the judge of said county court in and for said county of Cass, North Dakota, as a condition precedent to the filing of said inventory and appraisement, or allowing the same to be filed in said county court, required, exacted, and demanded of the said John Ireland, said executor, that said John Ireland, said executor, pay or cause to be paid into the treasury of the county of Cass, North Dakota, pursuant to chapter 119, Session Laws, N. D. 1909, the sum of five ($5) dollars for each and every one thousand ($1,000) dollars or fraction thereof in excess of the first $1,000 of value therein found, as shown by said inventory and appraisement; and that the judge of said county court, as a further condition precedent to the filing of said inventory and appraisement, required, exacted, and demanded of said John Ireland, said executor, a receipt signed by the treasurer of the county of Cass, North Dakota, showing that said John Ireland, said executor, had paid into the treasury of the county of Cass, the sum of five ($5) dollars for each and every one thousand ($1,000) dollars or fraction thereof, in excess of the first $1,000 of value therein found, as shown by said inventory and appraisement.

## VII.

"That thereupon and on the said 2d day of May, 1910, in order that he as executor might proceed with the administration of the estate of John Shanley, deceased, he, the said John Ireland, said executor, paid or caused to be paid to the treasurer of the county of Cass, North Dakota, and into the treasury of the county of Cass, North Dakota, as required, demanded, and exacted of the said John Ireland, said executor, by the said judge of the county court of the county of Cass, North Dakota, the sum of five ($5) dollars for each and every one thousand ($1,000) dollars or fraction thereof, in excess of the first $1,000 of value in said inventory and appraisement found, and as shown by said inventory and appraisement, taking the treasurer's receipt therefor, which said receipt, he, the said executor, thereupon filed

or caused to be filed in the county court of the said county of Cass, as required, demanded, and exacted by the judge of said county court."

## X.

"That the said payment to the treasurer of the county of Cass, North Dakota, and into the treasury of the county of Cass, of the sum of seven hundred and eighty-five and no/100 ($785) dollars mentioned and referred to in paragraphs eight (8) and nine (9) of the first cause of action, was required, demanded, and exacted of the said John Ireland, said executor, by the judge of the county court of the county of Cass, North Dakota, acting under color of law, and for public services which the said John Ireland, as executor of the estate of John Shanley, deceased, was entitled to have performed, and that when the sum of seven hundred and eighty-five and no/100 ($785) dollars, required, demanded, and exacted, as aforesaid, was paid, or caused to be paid by said John Ireland, said executor, to the treasurer of the county of Cass, North Dakota, and into the treasury of the defendant herein, the said county of Cass, the said payment so required, demanded, exacted, and paid was a payment to the county of Cass, said defendant, and was received by said defendant to the use of said John Ireland, said executor as aforesaid."

The complaint also affirmatively discloses upon its face that such payments were made without any written protest being filed, but under the conditions and in the manner set forth in the paragraphs of the complaint above quoted.

The sole ground of the demurrer is that the complaint fails to allege facts sufficient to constitute a cause of action, defendant's contention, in brief, being that the payments were voluntarily made, and therefore the action for the recovery thereof as for money had and received will not lie. The learned trial court, in its order overruling the demurrer, states that it follows the rule laid down in Trower v. San Francisco, 152 Cal. 479, 15 L.R.A.(N.S.) 183, 92 Pac. 1025. We are agreed that the rule there stated by the California court is both sound and in accord with the weight of authority, and that the trial court very properly overruled the demurrer. Upon the plainest principles of justice and equity, moneys thus exacted and received by

the county, in equity and good conscience, belong to the estate, and the county ought not to be heard to urge that the same were voluntarily paid, merely because the same were not paid under a formal written protest. The allegations of the complaint, which are admitted to be true by the demurrer, clearly disclose, we think, that the same were paid under legal duress and compulsion. We cannot improve upon the reasoning contained in the opinion of the California court in Trower v. San Francisco, supra, and we therefore quote therefrom as follows: "The act under which the fees were exacted by the county clerk being unconstitutional, the assignors of plaintiff had a right to have the inventories and appraisements in the various estates which they represented filed without payment of any separate fee therefor. The exaction of the fee provided under the unconstitutional act was illegally made by the clerk by virtue of his official position, and against the right of the assignors of plaintiff to have such documents filed immediately on their presentation. The law required that they be filed within a given time. It was necessary that they be filed in order to proceed with the administration of the respective estates. The executors would be deemed culpable in delaying their filing, and be subject at least to proceedings for removal from office for failure to do so. The only alternative left to the assignors of plaintiff was to commence mandamus proceedings to compel the filing of the documents, or pay the illegally exacted fees. They chose the latter alternative; and we are satisfied that, under the authorities, such payment was none the less involuntary, and that their right to recover it back was not at all affected by their failure to bring such mandamus proceedings."

The court then quotes with approval from the case of Lewis v. San Francisco, 2 Cal. App. 113, 82 Pac. 1106, as follows: "When an illegal demand is made against the person or property of an individual which can be enforced only by a judgment therefor in an action at law wherein he can contest its legality; or, if made under a threatened sale of his property, and he can contest the validity of the proceedings whenever an attempt is made to disturb his possession, and he pays the claim or demand rather than be subjected to such action or to have his property sold,—such payment is voluntary, to the extent that it cannot be recovered in an action therefor. If, however, an illegal demand is made by any person holding an official position,

with the color of authority to enforce the same, and such demand operates as a restraint upon the exercise of an undoubted right or privilege, and in its enforcement there is no opportunity of contesting its validity, a payment of the demand in order to remove such restraint is compulsory, and not voluntary. The distinction to be observed is between a payment made for the purpose of protecting or securing the present enjoyment of a right to which the person is immediately entitled, and a payment made to prevent a threatened disturbance of such right where there is no authority to interfere with its enjoyment until the right of the threatening party shall be established in a judicial proceeding in which the rights of the respective parties may be presented and determined. In the latter case, a payment to avoid such threatened contest is regarded as voluntary, while in the former case it is compulsory."

In 22 American & English Encyclopedia of Law, 2d ed. 619, the rule is stated thus: "The rule is well settled that a payment exacted by and paid to a public officer in excess of his legal fees in order to obtain the performance of his official duty, to which the payer is entitled without such payment, is compulsory, and may be recovered back; and in such a case it is not necessary that the payer should have protested against the payment; and it has been held that the fact that the failure of the payer to protest against the exaction of the illegal fees was due to his ignorance of the law would not prevent his recovery." Numerous authorities are cited in the note in support of the text above quoted, but we deem it unnecessary to cite them in this opinion. We call attention, however, to the following:

Clinton v. Strong, 9 Johns. 370; Townshend v. Dyckman, 2 E. D. Smith, 224; American S. S. Co. v. Young, 89 Pa. 186, 33 Am. Rep. 748; Robinson v. Ezzell, 72 N. C. 231; United States v. Lawson, 101 U. S. 164–169, 25 L. ed. 860–862; United States v. Ellsworth, 101 U. S. 170, 25 L. ed. 862; Swift & C. & B. Co. v. United States, 111 U. S. 22, 28 L. ed. 341, 4 Sup. Ct. Rep. 244; American Exch. F. Ins. Co. v. Britton, 8 Bosw. 148; Buckley v. New York, 30 App. Div. 463, 52 N. Y. Supp. 452. See also 30 Cyc. 1306 and cases cited.

In Townshend v. Dyckman, 2 E. D. Smith, 224, moneys were illegally exacted by the register of the city of New York, as a condition upon

which he would permit an inspection of certain public records.    The court said:

"But it is urged that this is a voluntary payment.   The plaintiff had a clear legal right to inspect this index, and if the defendant, having possession and control thereof, made use of his official authority, and under cover thereof exacted fees to which he had no legal claim, the payment was not a voluntary payment, but a payment by compulsion. If there was no authority to make the charge, its exaction was coercion as truly as if the register were to refuse to record a deed or render a service, upon the prompt rendering of which the security not only of millions of property, but oftentimes very important rights of persons, depends, and which it is his plain duty to render.   Such an abuse of official power, and of his control over public records, which he alone has in virtue of his public office, is, to my mind, coercion of a very efficient character."

In American S. S. Co. v. Young, the Pennsylvania court, among other things, said:

"We think that sound public policy requires us to hold that a public officer who, *virtute officii,* demands and takes as fees for his services, what is not authorized, or more than is allowed by law, should be compelled to make restitution.   He and the public who have business to transact with him do not stand upon an equal footing.   It is his special business to be conversant with the law under which he acts, and to know precisely how much he is authorized to demand for his services; but with them it is different.   They have neither the time nor the opportunity of acquiring the information necessary to enable them to know whether he is claiming too much or not."   "A public officer who by virtue of his office demands and takes unauthorized or illegal fees may be compelled to make restitution, and where such fees are paid to such officer, without protest or notice of intention to reclaim, it is not a voluntary payment, where a United States shipping commissioner charges a seaman, who has paid the shipping fee, an additional fee every time he reships on the same vessel for successive subsequent voyages, such charge is unauthorized by the acts of Congress, and the fees thus named may be recovered back in an action of assumpsit."

In Swift & C. & B. Co. v. United States, 111 U. S. 22, 28 L. ed. 341, 4 Sup. Ct. Rep. 244, it is said:

"A payment made to a public officer in discharge of a fee or tax illegally exacted is not such a voluntary payment as will preclude the party from recovering it back." "The appellant had no choice. The only alternative was to submit to an illegal exaction, or discontinue its business. It was in the power of the officers of the law, and could only do as they required. Money paid or other value parted with under such pressure, has never been regarded as a voluntary act within the meaning of the maxim, *Volenti non fit injuria.*"

In Meek v. McClure, 49 Cal. 623, the court had under consideration the question of the necessity of alleging and proving a formal protest in an action to recover back money illegally exacted, and, among other things, the court said:

"It was held in Hays v. Hogan, 5 Cal. 243; McMillan v. Richards, 9 Cal. 417, 70 Am. Dec. 655; Falkner v. Hunt, 16 Cal. 170, and other cases in this court, that if money which is not legally due is exacted by means of duress or coercion, it may, if paid under protest, be recovered back. The purpose and effect of the protest is not satisfactorily defined in any of those cases. In one of them it is said that one purpose of the protest is to take from the payment its voluntary character; but it is manifest that it is involuntary only, because of the coercion, the duress, or the undue advantage exercised or possessed by the party to whom the payment is made. If money is paid under those circumstances, to a party for his own use, no protest is necessary in order to lay the foundation for an action."

The facts surrounding the payments of this probate tax in the case at bar are in all essential particulars the same as those in the case of Malin v. Lamoure County, recently decided by this court, except in the latter case such payment was made subject to a formal written protest. Does this in legal effect serve to distinguish the cases? We think not. To so hold would, it seems to us, be giving undue weight to a fact which ought not, in justice and equity, to be of controlling importance. Why should the one be permitted to recover back such payments and the other denied such redress? Should the right to thus recover depend upon a formal protest having been made, or should it not rather depend upon the *fact* that such payment was coerced through

compulsion and duress, and was therefore involuntary? We are clear, both on principle and authority, that the latter is correct, and that in the absence of an express statute to the contrary, and none exists in this state, the only purpose accomplished by the making of a formal protest is the weight such protest may have in determining the crucial question as to whether the payment was involuntary, and in legal effect made under compulsion and duress. And where this fact is clearly established, plaintiff may recover without proof of protest having been made. Such fact effectually establishes nonconsent in making the payment, and this is all that proof of a formal protest amounts to. The most formal protest would not authorize, a recovery back of such money if the proof should disclose that, notwithstanding such protest, the payment was made under such conditions as to show that it was voluntary, and not made through legal duress.

In Malin v. Lamoure County, as above stated, a formal written protest was filed in connection with the payment of such tax; but we decided that case without any special reference to such fact, other than a mere recital of the allegation in the complaint, and in no sense can it be considered an authority in appellant's favor in the case at bar.

In 30 Cyc. 1310, the correct rule is stated as follows: "A payment is not rendered involuntary merely because the payer at the time of payment makes a protest against the payment. If money is paid under compulsion, no protest is necessary to lay the foundation of an action to recover the payment, except perhaps where the payment is to a public officer and he has no notice of the facts which render the demand illegal. But if there is doubt, under the circumstances, whether the payment was voluntary, the protest may be taken into account in determining the question."

Chief Justice Bartholomew, speaking for the court in Wessel v. D. S. B. Johnston Land & Mortg. Co. 3 N. D. 160, 44 Am. St. Rep. 529, 54 N. W. 922, said: "A protest is of no avail unless there be duress or coercion of some character, *and then its only office is to show that the payment is the consequence of such duress or coercion.*"

See also Chicago v. Sperbeck, 69 Ill. App. 562, and cases cited. Also note to the case of Atchison, T. & S. F. R. Co. v. O'Connor, Ann. Cas. 1913C, 1052.

We are not unmindful of the holding of the Minnesota court in De-

Graff v. Ramsey County, 46 Minn. 319, 48 N. W. 1135, in a case similar to the case at bar, in which that court sustained the lower court's finding to the effect that the payment was voluntary, and could not be recovered. But we note the following language in the opinion: "The appellant assigns as error that the finding of fact that the payment was voluntary is not sustained by the evidence. We have examined the evidence, and find that if in such a case the payment may be voluntary, it justifies the finding. . . . There is a class of cases where, although there be a legal remedy, his situation or the situation of his property is such that the legal remedy would not be adequate to protect him from irreparable prejudice,—where the circumstances and the necessity to protect himself or his property otherwise than by resort to the legal remedy may operate as a stress or coercion upon him to comply with the illegal demand. In such cases his act will be deemed to have been done under duress, and not of his free will. Such cases were Fargusson v. Winslow, 34 Minn. 384, 25 N. W. 942; State ex rel. McCardy v. Nelson, 41 Minn. 25, 4 L.R.A. 300, 42 N. W. 548; Mearkle v. Hennepin County, 44 Minn. 546, 47 N. W. 165, and the other cases cited by the respondent. In the Mearkle Case, which is more nearly like this than any other cited, the circumstances and condition of the estate were such that the court could see great and irreparable injury would accrue to it while the executor was seeking his legal remedy, and the payment was made under protest, so that not only the payor, but the payee also, understood that the former claimed the payment to be involuntary. We do not mean to say that in a clear case of coercion or duress a protest is necessary, or that it would be sufficient without circumstances of coercion; but if there be doubt, under the circumstances, that the payment is voluntary, it may be taken into account in determining the question that the payor declared as a part of his act that he paid involuntarily. In this case the evidence was not such as to require a finding that the estate would suffer while the executor might be enforcing the remedy afforded by the law against the refusal of a court to proceed when it is its duty to do so."

The court there merely recognized the fact, which no doubt is true, that a case of this kind may possibly arise under facts showing that a voluntary payment was made, and the finding of the trial court was sustained upon the sole ground that the evidence in that case was

susceptible of such construction. We cannot thus construe the allegations of the complaint before us.

We are asked to pass upon the question as to plaintiff's right to recover interest. This question does not properly arise on this appeal, which is not from the judgment, but from an order overruling defendant's demurrer to the complaint, which demurrer merely challenges the sufficiency of the complaint to state a cause of action. Hence, the question of the extent of such cause of action is not before us. Nor does the record disclose the amount of the judgment, if any, entered herein, or whether interest was or was not allowed by the trial court. Manifestly, therefore, such question can arise only on an appeal from the judgment. See, however, the following cases bearing upon this question: Lewis v. San Francisco, 2 Cal. App. 112, 82 Pac. 1106; Savings & L. Soc. v. San Francisco, 131 Cal. 356, 63 Pac. 665; Columbia Sav. Bank v. Los Angeles, 137 Cal. 467, 70 Pac. 308.

The order appealed from is affirmed.