[File No. 6076.]

BERTHA RUSS, Appellant, v. B. O. EVERSON, J. B. Sellon,
and L. N. Conklin, as County Commissioners of McLean County,
North Dakota, a Public Corporation, Respondents.

(246 N. W. 649.)

Opinion filed January 5, 1933.   Rehearing denied February 20, 1933.

*Hyland & Foster*, for appellant.

*G. A. Lindell*, for respondents.

BIRDZELL, J.   The plaintiff and appellant presented to the county of McLean two separate itemized statements for refund of taxes paid upon lands which she had acquired from the county. The county commissioners disallowed the claims for such refunds and the plaintiff appealed to the district court, where the appeals were consolidated and tried together. A judgment of dismissal was entered and the instant appeal is from such judgment. The first claim is for the aggregate amount of $719.31 and the second for the amount of $642.91. In the first claim there are eight items and in the second, twenty-one. While each item stands upon its own foundation, and while the facts are not identical for all the items included in a single claim, it is not necessary, as we view the case, to present the facts pertaining to the various items separately. The pertinent facts may be stated as follows:

In 1926 and 1927, with one exception to be noted below, the county of McLean procured tax deeds to a number of tracts of land which were subsequently sold to the plaintiff. The plaintiff's husband, Carl Russ, acted for her in the purchase and in all other transactions with McLean county concerning the lands. The tax deeds to the county were based

upon certificates of tax sales for the years 1920, 1921, 1922, 1923 and 1925. Most of them, however, were for the years 1921 and 1922. Thereafter the plaintiff purchased the lands from the county and paid taxes levied subsequent to those attaching to the lien of the certificates, on account of which the deeds issued to the county. The taxes so paid by the plaintiff and included in the first claim for refund of $719.31 were for the years 1926 and 1927 and had been spread before the plaintiff became the purchaser of the lands. The taxes represented in the second claim were, except as to one item, the taxes for 1926 and were similarly spread before the plaintiff became the purchaser. As to the excepted item, the county procured a tax deed on May 1, 1929, on a tax certificate issued in December, 1925. The plaintiff became the purchaser on August 6, 1929. Her deed was recorded August 19, 1929, and on August 26, 1929, she paid the tax of $52.64 spread for the year 1928.

The attempt in this proceeding is to obtain a refund of all the taxes so paid on the theory that such taxes were illegal, that they should have been cancelled by the county immediately upon acquiring the tax deed (see Chapter 266, Session Laws of 1927), and that they represented payments made by the plaintiff in such circumstances that the payments were not voluntary. The circumstances relied upon as showing that the payments were not voluntary differ in some respects for various items of taxes paid. As to some, it is the contention that they were required to be paid in order to record the deeds to the plaintiff. As to other items, it is contended that the plaintiff sold the lands to third parties and was required to pay the taxes in order to make clear title and so as not to lose the benefit of the sale; and as to others, that a loan upon the land was secured from the state school fund and in order to procure the completion of the loan the mortgagee required payment of the taxes, deducted the necessary amount from the loan and, in effect, paid the taxes with the appellant's money.

In the absence of any statutory regulation defining the character of protest requisite to enable a taxpayer to recover back a tax which he was under no legal liability to pay, there must be circumstances showing the payment to have been involuntarily made. A mere statement protesting the legality is not in itself a determining circumstance. Wessel v. D. S. B. Johnston Land & Mortg. Co. 3 N. D. 160, 54 N. W. 922, 44 Am. St.

Rep. 529; 26 R. C. L. 469; 3 Cooley, Taxn. (4th ed.) §§ 1296 and 1297; note and cases cited in 48 A.L.R. 1386. There is no statute in this state declaring what shall constitute an involuntary payment which will entitle one to recover taxes paid for which he was not liable. We must, therefore, examine the circumstances shown by this record to determine whether any of the taxes so paid and for which refund claims are made were paid involuntarily.

The first circumstance to be noted is whether or not there was a protest in fact. There was no written protest—none was either filed or noted on the tax receipts. The only evidence of a verbal protest is found in the testimony of the plaintiff's agent, Carl Russ. He testified to the effect that he was aware of the duty of the board of county commissioners, after the county obtained the tax deed, to cancel the taxes, and that they no longer represented a legal exaction. In response to the question of how he happened to pay the taxes, he said that when he went to the register of deeds to record his deeds the register said he had to go down to the county auditor and find out if there were any taxes on the land. He explained there wasn't supposed to be any taxes because it was county land, but the auditor reported that he looked it up and found there were taxes against it and that all he (Russ) could do was to pay them and get a refund and that if he could not get a refund he would have to sue the county to get the money back. He went to the treasurer's office and said he wasn't supposed to pay it and the treasurer said, "I know you are not supposed to pay it," and Russ said, "I will pay it but I have to get a refund." He testified that he had sold some of the lands prior to recording the deeds and it was necessary for him to record the deed in order to complete the transaction. He testified to a conversation with Simonson, chairman of the board of county commissioners, in which he had told Simonson there were taxes on the land he had bought from the county and Simonson replied, "It is Chris Hill's mistake, when they became county property he was supposed to strike it off. . . . If you pay the taxes we will refund it and take it off of the land you bought."

On cross-examination he testified that he first took the deeds to the register of deeds in December, 1927; that they were not all taken up at the same time; that the conversation he had with Simonson was in the fall of 1927, some time in October. He had tried to record some of his

deeds prior to that time. He bought considerable land from the county on tax deed in 1929, after Simonson went out of office. He did not pay the taxes all at one time. He got receipts as he paid them and the receipts are dated "about the same day, or maybe two days later." All the taxes were paid in order to get deeds on record and if it had not been necessary for him to get the deeds on record he would not have paid the taxes. "Q. And that is true in each and every case where you paid any taxes? A. Yes. . . . Q. That is the reason you paid them? A. Yes. Q. And if it hadn't been for that reason you wouldn't have paid the taxes? A. It was either for getting the deed on record, or if I sold it, if the party didn't record the deed right away. Q. It was either to record your deed, or else to enable the other fellow to record his deed? A. Yes. Q. That is why you paid these taxes? A. Yes. Q. That is true of each and every one of these taxes? A. Yes."

The witness was then shown the deed record book containing a record of a deed to a quarter section of land in section 30, township 150, range 79, which deed bore the date of August 1, 1927, and a recording date of August 11, 1927. He was shown a tax receipt showing that the 1926 taxes were paid on August 12, 1927, and the 1927 taxes paid on February 29, 1928. He then explained that the 1927 taxes were paid in 1928, in order to obtain a loan on the land.

An examination of the record shows that a large number of the tax deeds to the plaintiff were recorded before the taxes were paid, many of them being recorded a week before the date of the tax receipts, others a longer period and some shorter. In some instances it appears, too, that the tax sale certificates were held by individuals so that, as far as the county was concerned, the taxes were paid, and under the statute (§ 2212, 1925 Supplement to the Compiled Laws of 1913) and the practice followed in the offices of the auditor and register of deeds the conveyances to the plaintiff could have been recorded without redeeming from such sales. In addition to these discrepancies, Joseph Krebsbach, who was county treasurer at the time of the transaction in question, testified that he did not remember such a conversation as that narrated by Russ.

The trial judge in his memorandum opinion stated that the protest, if made, did not come to the attention of the treasurer and that the taxes were paid the same as all others. This amounts to a finding that there was no protest in fact and under the state of the evidence this

finding is entitled to weight and cannot properly be overturned. We are of the opinion it must be held on this appeal that there was no protest in fact.

In the absence of facts showing protest in fact, do the other circumstances with reference to payments to permit the recording of deeds, the completion of clear title where lands were sold by the plaintiff to third parties, or payment of taxes out of proceeds of a loan at the instance of the lender, amount to involuntary payments within the rule that permits recovery back?

The appellant relies principally on the case of Chicago, M. & P. S. R. Co. v. Bowman County, 31 N. D. 150, 153 N. W. 986, as supporting the contention that the payments in the instant case were involuntary. In that case it appeared that a portion of the tax charged against the plaintiff consisted of an excessive levy; that steps had been taken prior to the payment in an effort to have the illegal portion of the levy eliminated but without success; that the county treasurer was only authorized to receive the entire amount spread and that ultimately such amount was paid with an express protest noted as to the portion representing the illegal excess. The court held the record showed the payment to have been made to escape the penalty on the far larger portion of the tax, which was legal and admittedly valid, and to escape the further consequences of a distraint which would have followed in regular course had the plaintiff failed to pay. This was held to be an involuntary payment. In the instant case it is not contended that any portion of the tax was legal, or that any steps could have been taken to have coerced payment. If the statute relied upon as showing the illegality of the taxes is applicable, the expeditious remedy of mandamus was clearly available to procure their cancellation. Section 2,202, 1925 Supp. to the Compiled Laws of 1913, as amended by chapter 266, Laws of 1927. So far as the record shows, in nearly all instances the deeds were recorded before the payments were made. In these circumstances we do not feel called up to express an opinion as to whether payment of illegal taxes for the purpose of having a deed recorded would amount to involuntary payment, for we doubt if the record would support a finding that in any specific instance payment was exacted as a condition of entering a transfer that would have permitted the recording. The record rather shows that the practice was to the contrary. This practice might

well have been induced by a knowledge that the taxes for 1926 and 1927 had ceased to be, if in fact they ever became, liens. State v. Burleigh County, 55 N. D. 1, 212 N. W. 217. We are of the opinion that the appellant was under no compulsion to pay the taxes in question so far as the recording of deeds is concerned. This disposes of most of the items for which recovery is sought.

There remain for consideration items claimed to have been paid in order to perfect title so as to effect a sale and to secure a loan. As to these items we are also of the opinion, particularly in view of the expeditious remedy available (3 Cooley, Taxn. 4th Ed. § 1278) to pro-cure cancellation and of the absence of any apparent protest, that the payments must be held to have been voluntary. Fleetwood v. New York, 2 Sandf. 475; Feist v. New York, 74 App. Div. 627, 77 N. Y. Supp. 517; Redmond v. New York, 125 N. Y. 632, 26 N. E. 727; 3 Cooley, Taxn. (4th Ed.) § 1283.

There is nothing in the record to show that the circumstances in which taxes were paid in order to enable the plaintiff to make clear title to a purchaser render such payment involuntary. "The fact that an assessment was paid in order to enable the owner to complete his con-tract of sale does not make the payment compulsory so as to be recover-able back." 3 Cooley, Taxn. 4th ed. § 1290; Gage v. Saginaw, 128 Mich. 682, 84 N. W. 1100, 87 N. W. 1027; Tripler v. New York, 125 N. Y. 617, 26 N. E. 721.

It follows from what has been said that the taxes in question are not shown to have been involuntarily paid and, hence, that the same can not be recovered. The judgment appealed from is affirmed.

BURR, BURKE and CHRISTIANSON, JJ., and HUTCHINSON, Dist. J., concur.

Mr. Chief Justice NUESSLE did not participate, Hon. WM. H. HUTCHINSON, Judge of the Third Judicial District, sitting in his stead.