WILLIAM CLAIRMONT, INC., a corporation, et al., Plaintiffs, Appellants, and Cross-Appellees,

v.

STATE of North Dakota et al., Defendants, Appellees, and Cross-Appellants,

and

Standard Oil Company, an Indiana corporation, et al., Defendants.

Civ. 9364.

Supreme Court of North Dakota.

Dec. 19, 1977.

Rehearing Denied Jan. 11, 1978.

Lyle W. Kirmis, of Zuger & Bucklin, Bismarck, for plaintiffs, appellants, and cross-appellees.

Kenneth M. Jakes and Robert W. Wirtz, Special Asst. Attys. Gen., Bismarck, for defendants, appellees, and cross-appellants State of North Dakota and State Tax Commissioner; argued by Mr. Wirtz.

VOGEL, Justice.

This appeal involves the taxation of "special fuel,"[1] principally diesel fuel. The appellants are contractors who have been engaged in construction for the Federal Government on Federal projects, not including highways. The contractors sued the State of North Dakota and the State Tax Commissioner for a refund of special fuel taxes which they assert were erroneously collected. A large number of special fuel dealers, from whom they purchased the special fuels and to whom they paid the special fuel tax, are included as defendants, presumably for the reason that the tax was

---

1. "'Special fuel' means and includes all combustible gases and liquids suitable for the generation of power for propulsion of motor vehicles, except that it does not include motor vehicle fuels as defined in section 57–54–03; . . . ." Sec. 57–52–03, subsec. 4, N.D.C.C.

collected from the dealers by the State and refunds can be made only to the dealers. Some of the dealers answered and asked that the State be compelled to repay any sums they are held liable to pay to the contractors.

The contractors appealed from that portion of the judgment which held that the State need not return taxes collected prior to the service of the summons and complaint in this action but must pay back all sums collected thereafter. The State cross-appealed from the judgment and from the order denying a new trial.

The judgment provided that the State should retain from any funds ordered repaid a sum equivalent to two percent of the sale price, since all special fuels exempt from the seven percent tax imposed by Chapter 57–52 are taxable at the rate of two percent of sale price under Chapter 57–53. This provision is not challenged by either party.

For clarity, we will refer to the plaintiff-appellants as "the contractors" and the cross-appellants as "the State."

Both parties agree that the contractors are "industrial" users, within the meaning of subdivision 7 of Section 57–52–03, N.D. C.C., which read, prior to the 1977 amendment:

"7. 'Special fuel user' means any person receiving or purchasing special fuel except that it shall not include a person purchasing or receiving special fuels when such fuel is to be used for heating, industrial, agricultural or railroad purposes nor shall it include a special fuels dealer purchasing or receiving special fuel for resale; . . ."

Chapter 57–52, called the "Special Fuels Tax Act," is a comprehensive scheme of taxation of special fuels, and parallels the statutes which tax gasoline, Chapter 57–54. During times pertinent to this appeal, the Special Fuels Tax Act, Chapter 57–52, provided for a tax of seven cents per gallon on special fuel. The exact language imposing the tax is:

"57–52–04. Tax imposed—Exemptions.—There is hereby levied and imposed an excise tax of seven cents per gallon on the sale or delivery of special fuel to any special fuel user, except that special fuel to be used for heating, agricultural, *industrial* or railroad purposes *shall be exempt* from the tax imposed by this chapter. Said tax shall attach at the time of sale, delivery, or transfer of title of such special fuel to a special fuel user. Such tax shall be collected from the special fuel user by the special fuel dealer and paid over to the state tax commissioner as hereinafter provided. The tax imposed herein shall be refundable when used for nonhighway purposes, and the provisions and procedures of chapter 57–50 relating to the refund of motor fuel taxes shall apply to the tax imposed by this chapter." [Emphasis added.]

It is the position of the contractors that they are "exempt" from the imposition of the tax, and that the Tax Commissioner for many years has exceeded his authority in requiring them to pay the tax and that they are entitled to reimbursement for taxes erroneously collected.

It is the position of the Tax Commissioner that the word "exempt" does not mean that the tax cannot be collected, but only that the tax may be assessed and collected, subject to refund by the Tax Commissioner if the industrial users, such as the contractors, come within the terms of the refund statute, Section 57–50–05.1, which provides:

"57–50–05.1. Refunds to private individuals or corporations prohibited—Exception.—No tax refund shall be paid to any person, firm or private corporation on any motor vehicle fuel used, except liquefied petroleum gas used for heating purposes, if the work performed by a person, firm or private corporation is paid for from public funds of the United States, state, county, city, township, park district or other municipality."

Thus the main issue in the case is the correct interpretation of the above statutes as they apply to industrial users who utilize the fuel in performing government contracts.

Secondary issues presented by the parties are, first, whether principles of unjust enrichment preclude recovery by the contractors of any refund due if we find the tax to have been illegally assessed; second, whether the trial court was correct in limiting the recovery of illegally assessed and collected taxes to those collected after the date of service of the original summons and complaint; and, third, whether the court erred in denying the State's motion for a new trial.

We affirm the decision of the trial court on all issues.

## I

The statutes quoted above are those in effect from July 1, 1975, to July 1, 1977. The action was commenced and tried during that period of time. However, the analysis of the meaning of the relevant statutory provisions requires reference to the many amendments of the original statutes, dating back to 1955, which created the language in effect during the period of time covered by the pleadings.

## II

As we have stated, the first Special Fuels Tax Act was enacted in 1955. It was Chapter 335, 1955 Session Laws. It defined "special fuel" as "all combustible gases and liquids suitable for the generation of power for propulsion of motor vehicles, except that it does not include motor fuel as defined in section 57–4101 . . ." It defined "sale" as the "receipt, delivery or transfer of title to special fuels by a special fuel dealer to a special fuel user except that it shall not include the receipt, delivery, or transfer of title to heating fuels when such fuel is delivered into a fuel tank connected with a heating appliance; . . ." And it imposed an excise tax of six cents per gallon on the sale or delivery of special fuel to any special fuel user, "except that special fuel for heating purposes which is delivered into a fuel tank connected with a heating

appliance shall be exempt from the tax imposed by this Act."

In 1959, by Chapter 404, 1959 Session Laws, the definitions of "sale" and "special fuel user" were changed so that "sale" did not include "receipt, delivery, or transfer of title to special fuels to be used for heating, agricultural and railroad purposes;" and provided that "special fuel user" shall "not include a person purchasing or receiving special fuels when such fuel is to be used for heating, agricultural or railroad purposes . . ." Likewise, the amendment provided that the tax of six cents per gallon was imposed "except that special fuel to be used for heating, agricultural or railroad purposes shall be exempt from the tax imposed by this chapter."

The latter provision was again amended in 1963, by Chapter 409, Session Laws 1963, so as to impose the tax "except that special fuel to be used for heating, agricultural, *industrial* or railroad purposes shall be exempt from the tax imposed by this chapter." [Emphasis added.][2] Prior to 1963, industrial users of special fuels could recover special fuel taxes paid under a refund provision. See *Peter Kiewit Sons' Co. v. State*, 116 N.W.2d 619 (N.D.1962).

In 1967, by Chapter 467 of the Session Laws, "special fuel user" was redefined so as to exclude users of fuel for industrial purposes, along with fuel used for heating, agricultural, or railroad purposes.

Finally, in 1969, by Chapter 535, 1969 Session Laws, the tax was raised to seven cents per gallon.

This history shows that the Legislature first exempted from the special fuels tax certain fuel used for heating, then extended the exemption to fuel used for agricultural and railroad purposes, and finally added to the list of exempt fuels those special fuels used for industrial purposes.

■ The word "exempt" has a plain and common meaning. As applied to taxation,

---

**2.** This amendment may have been a legislative response to the decision in *Peter Kiewit Sons' Co. v. State, supra*, which held that special fuel

taxes paid on special fuels purchased for industrial use at a Federal air base were subject to refund.

it means "freedom from the burden of enforced contributions to the expenses and maintenance of government, or an immunity from a general tax." *Kroger Co. v. Schneider*, 9 Ohio St.2d 80, 223 N.E.2d 606, 610 (1967). It is a special freedom from taxation imposed upon others, a dispensation. *P. Lorillard Company v. City of Seattle*, 8 Wash.App. 510, 507 P.2d 1212 (1973).

■ This is the sense in which the word "exempt" is customarily used in the statutes of this State. in 1969, by Chapter 528, Section 18, 1969 Session Laws, certain kinds of milk, meat, and fish products were exempted from sales tax. A long list of exemptions from sales tax is found in Section 57–39.2–04, N.D.C.C. Exemptions from estate tax are listed in Section 57–37–11. Exemptions from property taxes are found in Section 57–02–08. The list could be extended, but the point we want to make is simply that in none of these cases are taxes collected and then refunded. Instead, the word "exempt" is used to signify that no tax is payable in the first instance.

Furthermore, the tax is imposed only on "special fuel users" [Sec. 57–52–04, N.D.C.C.], and persons who purchase or receive special fuels for industrial purposes are not special fuel users [Sec. 57–52–03, subdiv. 7].

■ It is true, as the State suggests, that legislation could provide for an "exemption" by authorizing refunds. But such "exemption" must be spelled out in a statute, as in *Wood Bros. Const. Co. v. Bagley*, 232 Iowa 902, 6 N.W.2d 397 (1942).

■ Applying words in their ordinary sense, we conclude that the Legislature intended to, and did, in the statutes described, provide that special fuels used for heating, agricultural, railroad, and industrial purposes are exempt from taxation, meaning that no tax is to be collected from persons who use the fuel for purposes declared exempt and who are not "special fuel users" as defined in the law.

### III

The State argues, however, that additional language in the statutes indicates a dif-

ferent intention and result. It points to, first, the last sentence of Section 57–52–04, which provided [until amendment in 1977, effective only as to contracts entered into after January 1, 1977 (Ch. 553, § 6, 1977 S.L.)]:

"... The tax imposed herein shall be refundable when used for nonhighway purposes, and the provisions and procedures of chapter 57–50 relating to the refund of motor fuel taxes shall apply to the tax imposed by this chapter."

■ The first part of this sentence provides that a tax paid under Section 57–52–04 on special fuel used for nonhighway purposes is refundable. By its plain terms, its applies only to a tax *imposed* under Chapter 57–52, and not to special fuels *exempted* from that chapter. As an example of the situation where a refund would be payable, we suggest that the use of taxed diesel fuel in a bulldozer operated and owned by the owner of urban property and used to dig a basement, would create an appropriate situation permitting a refund. As counsel for the contractors suggest, the tax paid on special fuels used in boats or in off-the-road recreational vehicles would also be subject to refund.

■ "Tax exemption" implies that no tax is payable, while "a refund" implies that a tax paid is subject to reimbursement.

The State points to Section 57–50–05.1, quoted above, under which it has refused to give refunds to the appellants in this case, claiming that the statute forbids refunds to the appellants. Indeed it does, but since the appellants were exempt from the tax in the first place, they should not have been taxed at all. What they seek now is not "refunds" but restitution of taxes illegally assessed and collected.

■ The reliance of the State upon Section 57–50–05.1 might be stated somewhat as follows:

1. The word "exempt" in Chapter 57–52 does not mean *exempt,* but means only that the tax is payable and subject to refund;

2. The refund is payable under the refund provisions of Section 57–52–04, quoted above; but

3. We cannot pay it to the plaintiffs because they did their work for the Federal Government or other public agency and refunds are therefore prohibited by Section 57–50–05.1. This argument, aptly characterized during oral argument as "Catch 22," is defeated if the word "exempt" is used in its plain and ordinary meaning and the term "special fuel user" is used as defined by statute. If the special fuel in question is exempt from taxation under Section 57–52–04, then no tax is payable and neither the statute providing for refunds nor the statute prohibiting refunds under certain circumstances is applicable.

## IV

The State argues strenuously that the appellants should be allowed no refunds, because they would be "unjustly enriched" by such refunds. It asserts that the appellant contractors must have included the amount of the special fuels tax in their bids to the Federal Government, and therefore were paid the amount of the tax by the Federal Government upon completion of the construction projects, and recovering the amount of the tax would constitute a "double-dipping" or unjust enrichment.

No North Dakota cases are cited on this proposition. Our research of the usual indexes to our statutes and court opinions discloses that this court has referred to "unjust enrichment" only in connection with constructive trusts of property, as in *McDonald v. Miller*, 73 N.D. 474, 16 N.W.2d 270, 156 A.L.R. 1328 (1944); *Rovenko v. Bokovoy*, 77 N.D. 740, 45 N.W.2d 492 (1950); and *Scheid v. Scheid*, 239 N.W.2d 833 (N.D. 1976). These cases are not in point. They involve allegations of fraud, duress, undue influence, or acquisition or retention of title to property in violation of fiduciary duty, in which confidential relationships are of major importance. *McDonald v. Miller, supra.* See also Restatement, *Restitution*, Sec. 160 (1937). There are no such allegations involved in this case.

Most cases cited from other States which refer to unjust enrichment are not in point. In *United States v. Jefferson Electric Co.*, 291 U.S. 386, 54 S.Ct. 443, 78 L.Ed. 859 (1934), and *Shannon v. Hughes Co.*, 270 Ky. 530, 109 S.W.2d 1174 (1937), the right of recovery was limited by statute to taxpayers who could prove that they had not shifted the tax to another. In *Sharpe v. Standard Oil Co.*, 322 So.2d 457 (Miss.1975), the statutory scheme included a provision prohibiting refunds where the fuel was used on Government contracts, but contained no provision exempting industrial users, and included a definition of "use" far broader than the definition of "special fuel user" in Section 57–52–03, subdivision 7.

Perhaps the concept the State means to invoke is that of "real party in interest" rather than "unjust enrichment." The claim that the real party in interest must sue is not applicable here, however, where the taxpayers, as well as fuel users, are before the court. If we assume that the tax ultimately is passed on to the agency which made the contract with the contractor, or even the general public, the "special fuel user" in this case still is the real party in interest. *City of Detroit v. Murray Corp.*, 234 F.2d 380 (6th Cir. 1956). The tax was collected by the dealer from the user and paid to the State. They are the only parties involved in the tax scheme, and they are before the court. The mutual responsibilities of the user, on the one hand, and the Federal agency it contracted with, on the other hand, are not before us.

We hold that neither the doctrine of "unjust enrichment" nor of "real party in interest" precludes a recovery in this case.

## V

The principal complaint of the appellants, who prevailed on the other points we have discussed, is that the trial court refused, for the reason that the payment of the taxes was "voluntary," to order the repayment or restitution of taxes paid by them prior to service of the summons and complaint in this action.

Although there is no specific statutory authority so prescribing, the courts of this State from a very early date have held, in accordance with the general rule, that taxes voluntarily paid are not subject to recovery by the taxpayer. *Stern v. Gray*, 70 N.D. 549, 296 N.W. 419 (1941); *Home Owner's Loan Corp. v. Wright*, 71 N.D. 235, 299 N.W. 860 (1941); *Ford Motor Co. v. State*, 65 N.E. 316, 258 N.W. 596 (1935); *Russ v. Everson*, 63 N.D. 146, 246 N.W. 649 (1933); *State ex rel. Old Line Life Ins. Co. of America v. Olsness*, 63 N.D. 695, 249 N.W. 694 (1933); *Chicago, M. & P. S. Ry. Co. v. Bowman County*, 31 N.D. 150, 153 N.W. 986 (1915); *Leach v. Rolette County*, 29 N.D. 593, 151 N.W. 768 (1915); *Diocese of Fargo v. Cass County*, 28 N.D. 209, 148 N.W. 541 (1914); *Malin v. La Moure County*, 27 N.D. 140, 145 N.W. 582 (1914); *St. Anthony & D. Elevator Co. v. Soucie*, 9 N.D. 346, 83 N.W. 212, 50 L.R.A. 262 (1900); *Rushton v. Burke*, 6 Dak. 478, 43 N.W. 815 (1889).

These cases hold that the presence or absence of a written protest to the payment of a tax is not controlling as to voluntariness of the payment of the tax, and that each case must be decided upon its own facts.

Without going farther into the precedents, we are satisfied that payments of the special fuels tax prior to the service of process in the present action were voluntary. There is no showing whatever of any objection or protest of any kind prior to that date. We are also satisfied that the trial court was acting well within its discretion in determining that the date when the payments became involuntary was the date of service of process in the present action, although it might just as well have concluded that the appropriate date was the date of filing of the answer by the State.

■ In so holding we recognize that some of the relevant case law places some weight upon the existence of a statutory scheme for penalizing nonpayment of taxes when due, as by imposing penalties, fines, loss of license, and the like. Such penalties are to be found in the statutory scheme as to payment of special fuels tax. Secs. 57–52–08, 57–52–12, 57–52–18, and 57–52–19, N.D.C.C. However, there is no showing in the present case that any effort was made to find out whether these provisions were to be enforced, whether an agreement to postpone collection while litigating the merits could be made, whether the taxes could be deposited in court during litigation, or whether enforcement of the statutes could be suspended by mandamus proceedings. There was no showing of imminent danger of prompt enforcement of the penalties specified in the statutes, as there was in the *Bowman County* and *Ford Motor* cases, *supra*. Compare *Russ v. Everson, supra*. Under the circumstances of this case, the mere presence of the potential threat of enforcement of such statutes does not constitute such duress as to make the payment of the tax involuntary. If enforcement had been commenced, the dealers could have asserted the defense that the appellants were exempt from the tax in any action to invoke the penalties.

It seems anomalous, if not inequitable, that a State which makes laws requiring other persons to return ill-gotten gains may itself retain property it has received but to which it was not entitled. But the law as to retention of taxes voluntarily paid has been in effect since Territorial days [*Rushton v. Burke, supra*] and we decline to change it now. It still is the law that "Men must turn square corners when they deal with the Government." Holmes, in *Rock Island, Arkansas & Louisiana R.R. Co. v. United States*, 254 U.S. 141, 41 S.Ct. 55, 65 L.Ed. 188 (1920).

Since we find no error, we hold that the denial of the motion for new trial was proper.

Judgment affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.