James PETERSON and Ashland Oil,
Inc. Appellants,

v.

M.K. Heidi HEITKAMP, Tax
Commissioner, Appellee.

Civ. No. 890008.

Supreme Court of North Dakota.

June 6, 1989.

Clement Beal Thames, Jr., Bismarck, for appellants.

Debra McMartin, Asst. Atty. Gen., Bismarck, for appellee.

LEVINE, Justice.

James Peterson and Ashland Oil, Inc. appeal from a district court order affirming the Tax Commissioner's assessment of an oil extraction tax against Ashland Oil. We affirm.

Section 57–51.1–02, NDCC,[1] imposes an oil extraction tax on oil produced in North

---

1. NDCC § 57–51.1–02 provides:
   "There is hereby imposed an excise tax, to be known as the 'oil extraction tax', upon the activity in this state of extracting oil from the earth, and every owner, including any royalty owner, of any part of the oil extracted shall be deemed for the purposes of this chapter to be

Dakota. Section 57–51.1–03(2), NDCC,[2] provides an exemption from the tax for "stripper well property." "Stripper well property" is defined by NDCC § 57–51.1–01(8)[3] as "a 'property'[4] whose average daily production of oil ... [meets specified requirements] during any preceding consecutive twelve-month period beginning after December 31, 1972."

On June 17, 1987, the Tax Commissioner assessed against the purchaser, Ashland Oil, an oil extraction tax of $2,143.60 plus interest and penalties for oil produced from a well leased and operated by Peterson. The well met the statutory requirements and was certified as "stripper well property" by the North Dakota Industrial Commission. The tax assessment period included a portion of the twelve-month qualifying period required for certification as stripper well property.

A protest was filed objecting to the assessment on the ground that the stripper well property was exempt from the oil extraction tax during the twelve-month qualifying period. After reconsideration, the Tax Commissioner denied the protest on the ground that the oil produced by the property during the twelve-month period required to qualify for exemption was sub-ject to the oil extraction tax. An administrative complaint was filed and the assessment was upheld.

Peterson and Ashland Oil appealed and submitted the case on stipulated facts. The district court affirmed and Peterson and Ashland Oil appealed.

The sole issue on appeal is whether oil produced from a stripper well property during the twelve-month qualifying period is subject to the oil extraction tax under NDCC ch. 57–51.1.

The Tax Commissioner contends that, under the statute, a property is exempt from the tax only after it qualifies as "stripper well property." She argues that because a property is, by definition, a stripper well property only after it meets the statutory requirements during the twelve-month qualifying period, the stripper-well-property exemption necessarily applies only to the oil produced after the property fulfills the specified requirements and is certified as stripper well property. Peterson and Ashland Oil assert that the oil produced during the twelve-month qualifying period is exempt from the tax.

There are a number of legal principles relevant to our resolution of the is-

---

engaged in the activity of extracting that oil...."

**2.** NDCC § 57–51.1–03 provides:
"The following activities are specifically exempted from the oil extraction tax:
"1. The activity of extracting from the earth any oil that is exempt from the gross production tax imposed by chapter 57–51.
"2. The activity of extracting from the earth any oil from a stripper well property.
"3. For a well drilled and completed after April 27, 1987, the initial production of oil from the well is exempt from any taxes imposed under this chapter for a period of fifteen months. Oil recovered during testing prior to well completion is exempt from the oil extraction tax. The exemption under this subsection becomes ineffective if the average price of a barrel of crude oil between June first and October thirty-first of any year is thirty-three dollars or more."

**3.** NDCC § 57–51.1–01(8) provides:
"8. 'Stripper well property' means a 'property' whose average daily production of oil, excluding condensate recovered in nonassociated production, per well did not exceed ten barrels per day for wells of a depth of six thousand feet or less, fifteen barrels per day for wells of a depth of more than six thousand feet but not more than ten thousand feet, and twenty barrels per day for wells of a depth of more than ten thousand feet during any preceding consecutive twelve-month period beginning after December 31, 1972. Wells which did not actually yield or produce oil during the qualifying twelve-month period, including disposal wells, dry wells, spent wells, and shut-in wells, are not production wells for the purpose of determining whether the stripper well property exemption applies."

**4.** NDCC § 57–51.1–01(4) defines "property" as:
"4. 'Property' means the right which arises from a lease or fee interest, as a whole or any designated portion thereof, to produce oil. A producer shall treat as a separate property each separate and distinct producing reservoir subject to the same right to produce crude oil; provided, that such reservoir is recognized by the industrial commission as a producing formation that is separate and distinct from, and not in communication with, any other producing formation."

sue. One claiming a tax exemption has the burden of establishing exempt status, and the tax exemption statute will receive a strict construction against the claimant. *Minot Farmers Elevator v. Conrad*, 386 N.W.2d 463, 466 (N.D.1986). However, words describing the object of a tax exemption will be given a liberal and not a harsh or strained construction in order to obtain a reasonable result effectuating the legislative intent in providing a tax exemption. *Id.*

■ The interpretation of a statute is fully reviewable by this court. *Ladish Malting Co. v. Stutsman County*, 351 N.W.2d 712, 718 (N.D.1984). In interpreting a tax statute, we apply the general rules of construction. *See Amerada Hess Corp. v. Conrad*, 410 N.W.2d 124, 130 n. 6 (N.D.1987). Our primary objective in the interpretation of a statute is to ascertain the intent of the Legislature. *Ladish Malting Co., supra.* The legislative intent must first be sought from the language of the statute. *Rocky Mountain Oil & Gas Ass'n v. Conrad*, 405 N.W.2d 279, 281 (N.D.1987). Where the Legislature's intent is apparent from the face of the statute, there is no room for construction and the court will follow the rule of literal interpretation in applying the words of the statute. *Coldwell Banker v. Meide & Son, Inc.*, 422 N.W.2d 375, 379 (N.D.1988).

■ In interpreting a statute, words must be given their plain, ordinary and commonly understood meaning, and consideration should be given to the ordinary sense of statutory words, the context in which they are used, and the purpose which prompted their enactment. *Coldwell Banker, supra; Stutsman County v. State Historical Society*, 371 N.W.2d 321, 327 (N.D.1985); NDCC § 1–02–02. When a statute is unambiguous, it is improper for the court to attempt to construe the provisions so as to legislate that which the words of the statute do not themselves provide. *Haider v. Montgomery*, 423 N.W. 2d 494, 495 (N.D.1988).

■ Finally, the practical construction of a statute by the agency administering the law is entitled to some weight in construing the statute, if the agency interpretation does not contradict clear and unambiguous statutory language. *Rocky Mountain Oil & Gas Ass'n, supra* at 283.

A "stripper well property" is defined as "a 'property' whose average daily production of oil ... [meets specified requirements] during any preceding consecutive twelve-month period beginning after December 31, 1972." NDCC § 57–51.1–01(8). Our focus is on the meaning of the words "preceding consecutive twelve-month period."

■ Both parties agree that the statute is unambiguous. The Tax Commissioner argues that we must give the word "preceding" its plain meaning, which is "occur prior to." [Citing The American Heritage Dictionary of the English Language, New College Edition (1982)]. Thus, the Tax Commissioner asserts that the commonly understood meaning of the phrase "preceding consecutive twelve-month period" is that the twelve-month period must occur prior to the time the property becomes a stripper well property and prior to the time it is exempt. We find the Tax Commissioner's interpretation persuasive because it is consonant with the rule of construction affording words in a statute their commonly understood meaning. The Tax Commissioner's interpretation is also entitled to "some weight" in our interpretation of the statute. Most important, this interpretation is consistent with the clear legislative intent to provide tax relief to marginal oil wells, presumably to encourage production.

However, Peterson and Ashland Oil argue that the twelve-month period merely contemplates a demonstration period which is used simply to identify a stripper well property, and is not a prerequisite that must be met in order for the exemption to apply. We disagree.

The oil extraction tax is paid on a monthly basis. NDCC §§ 57–51.1–05 and 57–51–05. To interpret the statute in the manner advanced by Peterson and Ashland Oil, the statute would, in effect, provide a refund for stripper well property during the twelve-month qualifying period necessary

for its certification as exempt. Yet, neither the law nor the statute supports this interpretation.

■ "Exempt," as applied to taxation, means "an immunity from a general tax." *William Clairmont, Inc. v. State*, 261 N.W.2d 780, 783–84 (N.D.1978). In other words, "no tax is payable in the first instance." *Id.* at 784. An exemption does not mean that a tax is payable and then subject to a refund. *Id.*

While the Legislature could provide for an "exemption" by authorizing refunds, such an exemption must be spelled out in the statute. *Id.* We find nothing in the statute to indicate that the Legislature intended to provide a refund for taxes paid on "stripper well property" during the twelve-month qualifying period. NDCC ch. 57–51.1 provides for refunds only for overpayments, duplicate payments and erroneous payments. NDCC §§ 57–51.1–05; 57–51–19. We do not believe that taxes paid as required by law are overpayments, duplicate payments or erroneous payments.

Given the parties' characterization of the statute as unambiguous, and interpreting the language of the statute in its ordinary sense in light of the statutory purpose, we conclude that the Legislature intended to provide an exemption for stripper well property only after the property has fulfilled the statutory requirements in "any preceding, consecutive twelve-month period." [5]

We note that in 1987, the Legislature provided a tax exemption "for the initial production of oil" for a period of fifteen months for wells drilled and completed after April 27, 1987. NDCC § 57–51.1–03(3)

(*see* n. 2). This is a clear legislative expression that, to provide tax relief for new wells, the initial production of oil is exempt. There is no comparable indication that the Legislature intended that the oil produced during the twelve-month qualifying period for stripper well property be exempt, and we believe the Legislature did not intend the exemption to reach back into the qualifying period.

Our interpretation is consistent with the statute's purpose to provide tax relief for marginal oil wells. Although, arguably, the legislative intent could be further advanced if the property were exempt from the tax during the qualifying period as well as when certified as a "stripper well property," the extent of tax relief is a matter of legislative policy. *Cf. Minnesota Mining and Manufacturing Co. v. Conrad*, 418 N.W.2d 276, 279 (N.D.1987) [tax deductions and exemptions are a matter of legislative grace]. We, therefore, refrain from construing the statute to legislate what the words themselves do not provide. *Haider, supra.*

Accordingly, we affirm.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.

---

**5.** Because the statute is conceded to be unambiguous, we need not resort to the legislative history to aid in our interpretation. We note, however, that the legislative history reveals that the definition of stripper well property was taken from the Department of Energy (DOE) regulations, and was intended to be consistent with the DOE regulations. Minutes of Senate Finance and Taxation Committee, March 9, 1981, and March 20, 1981; 1981 S.L. ch. 612 § 2. Our interpretation of the statute is consistent with comparable federal regulation. *See* 10 CFR § 212.74(c)(i) (1976). [Stripper well exemption repealed by 42 U.S.C. § 6201 (1977) reinstated

by 42 U.S.C. § 6801 et seq. and 15 U.S.C. § 761 et seq. (1980)]. The Federal Energy Administration (FEA) amended the regulation to provide that once a property has qualified for the exemption, the property remains exempt. 40 Fed.Reg. 22,123 (May 21, 1975). In discussing the amendment, the FEA explained: "the current regulation affords an exemption only in the year following a calendar year in which production from the lease was at or below the statutory [requirements]...." *Id.* [quoted in *Southland Royalty Co. v. Federal Energy Adm'n*, 512 F.Supp. 436, 440 (N.D.Tex.1980)].